398 A.2d 680

Theodore Edward DE SALLE

v.

PENN CENTRAL TRANSPORTATION COMPANY and Roy H. Lamberson, Appellants.

Superior Court of Pennsylvania.

Argued Nov. 15, 1977.

Decided Feb. 22, 1979.

486

Aloysius F. Mahler, Pittsburgh, for appellants.

John J. Ross, Aliquippa, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PRICE, Judge:

This appeal arises from the lower court's denial of appellants' motion for judgment non obstante veredicto or alternatively, a new trial. We hold that judgment n. o. v. should have properly been entered in favor of appellants and, therefore, reverse the judgment of the lower court.

■ On appeal from a denial of judgment n. o. v., we are constrained to view the evidence in the light most favorable to the appellee, allowing him the benefit of every fact and every reasonable inference of fact arising therefrom, and resolving any conflict of evidence in his favor. *Jones v. Three Rivers Management Corp.,* 251 Pa.Super. 82, 380 A.2d 387 (1977), *reversed on other grounds,* 483 Pa. 75, 394 A.2d 546 (1978); *Hargrove v. Frommeyer & Co.,* 229 Pa.Super. 298, 323 A.2d 300 (1974). Examining the record in this light, the following facts were adduced at trial.

On the afternoon of April 8, 1972, appellee reported for work in his capacity as flagman at appellant Penn Central's railroad yard, where he had been employed for the previous thirty-five years. At sometime prior to 5:45 p. m., both appellee and Wilbert Elwood, the conductor and supervisor of the train crew, boarded a caboose located on the camp track. Appellee did not, however, actually observe Elwood enter the caboose, which was approximately 23 feet by 9 feet. Subsequently, the caboose was moved to a position approximately 30–40 feet from a sealed freight car on a parallel track which had been loaded with bacon.

While appellee was seated at his desk in the caboose, he heard a pounding at the door, and after opening it, admitted appellant Ray Lamberson and James Bickar. Both Lamberson and Bickar were railroad policemen employed by appellant Penn Central Transportation Company. Lamberson

asked appellee if he had seen anything unusual, and upon receiving a negative reply, requested and received permission to search the caboose. When queried as to the reason for the search, Lamberson responded that someone had broken into cars on a nearby track. After a fruitless search of appellee's suitcase and personal effects, appellant investigated the remainder of the caboose and discovered forty-eight pounds of bacon hidden in a cupboard. The bacon corresponded to a carton which had been found missing from another freight car. Both appellee and Elwood denied any knowledge of either the existence of the bacon or how it appeared in the caboose. They further stated to Lamberson that no one had entered the caboose since they themselves boarded in the late afternoon.

After eliciting this information from the two men, Lamberson instructed Bickar to remain in the caboose while he spoke with the general yardmaster. The latter explained to Lamberson that Elwood and appellee had entered the caboose some one-half mile from their present location. Returning to the caboose with the trainmaster, Lamberson again asked appellee and Elwood if they knew how the bacon had gotten into the caboose. When both responded once more that they knew nothing of the bacon, Lamberson arrested Elwood and appellee, removed them from the caboose, and escorted them to the administrative building of the railroad yard where appellee was interrogated. Subsequently, Elwood and appellee were taken before a justice of the peace and criminal charges were initiated against both for larceny,[1] burglary,[2] and receiving stolen goods.[3] Appellee was immediately suspended from his position and later dismissed.

At trial following a grand jury indictment, Elwood admitted bringing the bacon onto the caboose, although he contended that he merely found it lying outside and was going

1. 18 Pa.C.S. § 3921.

2. 18 Pa.C.S. § 3502.

3. 18 Pa.C.S. § 3925.

to return it. He testified that appellee knew nothing of the carton and the latter was subsequently acquitted. Appellee then brought an action for malicious prosecution against appellants, and pursuant to a jury verdict, was awarded a judgment in the amount of $50,000.

In an action for malicious prosecution, the plaintiff must prove that the defendant instituted proceedings without probable cause, with malice, and that the proceedings were terminated in favor of the plaintiff.[4] *Hugee v. Pennsylvania Railroad Co.,* 376 Pa. 286, 101 A.2d 740 (1954); *Miller v. Pennsylvania Railroad Co.,* 371 Pa. 308, 89 A.2d 809 (1952); *Byers v. Ward,* 368 Pa. 416, 84 A.2d 307 (1951); Restatement of Torts, § 653 (1938); *see also* the exhaustive discussion of malicious prosecution in *Simpson v. Montgomery Ward & Co.,* 354 Pa. 87, 46 A.2d 674 (1946). Absence of probable cause is an indispensable element of the action, and it is not conclusively established by an adjudication of innocence in the prior proceeding. *Miller v. Pennsylvania Railroad Co., supra.* As was stated in *Miller:*

> "While the return of a true bill of indictment by the grand jury may constitute *prima facie* evidence of *probable cause, Graham v. Noble,* 13 S. & R. 232, 234, the corollary of that legal principle is that an acquittal is not sufficient in itself to establish *want of probable cause* [citing cases]." *Miller v. Pennsylvania Railroad Co., supra,* 371 Pa. at 313–14, 89 A.2d at 811, *quoting Byers v. Ward, supra* 368 Pa. at 421, 84 A.2d at 310. (emphasis in original).

If probable cause does exist, the motive of the prosecutor, whether malicious or not, is immaterial. *Simpson v. Montgomery Ward & Co., supra.*

4. Such a burden is severe but necessary. As was reiterated in *Simpson v. Montgomery Ward & Co.,* 354 Pa. 87, 46 A.2d 674 (1946): "It is doubtless a hardship for plaintiff, an innocent man, to be subjected to arrest and imprisonment. But that is an inevitable occasional result of living in a civilized and orderly community. Some concession to public interests, and some sacrifice of individual rights, are part of the foundation on which society is supported." *Id.* at 103, 46 A.2d at 681, *quoting Madison v. Pennsylvania R. R. Co.,* 147 Pa. 509, 511–12, 23 A. 764, 765 (1892).

██ The want of probable cause is a matter for the court and not the jury when there is no conflict in the evidence, or only slight differences in collateral matters. As our supreme court stated in *Simpson:*

"It has been immemorially held that the public interest requires that the legally trained mind of the judge and not the more or less emotional minds of jurors, decide whether or not there was probable cause for the initiation of the prosecution. Jurors are likely to confuse the issue of the guilt or innocence of the defendant in the criminal case out of which the civil action originated with the basic issue whose determination decides the civil action. That basic issue is the want of probable cause for the criminal prosecution." *Id.,* 354 Pa. at 92, 46 A.2d at 676.

██ It is only when there is a variance in the testimony that the jury must be utilized to determine factual issues. In such instances, the court has two options: (1) require the jury to find a special verdict upon which the court may determine the existence of probable cause; or (2) charge the jury under what combination of circumstances, which may be found under the evidence, the defendant did or did not have probable cause for initiating proceedings. Restatement of Torts § 673, comment d at 437 (1938), *cited with approval in Simpson v. Montgomery Ward & Co., supra,* 354 Pa. at 96, 46 A.2d at 678.

██ Instantly, the lower court charged the jury that, "the issue for you to determine from the evidence, not as I have recalled it, but as you recall it, is . . . did he have probable cause . . .. [D]id he have probable cause to make the arrest and to commence and prosecute the prosecution which was the basis for the instant civil action . . . .. You are to determine under the definition of probable cause as I have given it to you . . . [if] the police officer did not have probable cause for initiating and prosecuting the criminal charges . . .." N.T. 148.

This was error. The discrepancies in the testimony were neither substantial, nor directly applicable to the issue of probable cause. Indeed, the only point of dispute mentioned by the lower court in its charge to the jury was whether appellee's delay in opening the caboose door for Lamberson was attributable to the door being locked or merely jammed. Coupled with other minor matters, this was insufficient to send the issue to the jury even under proper instructions. Rather, the court itself should have determined the matter of probable cause. If probable cause were not found, only then should it have submitted the question of malice to the jury.

Nevertheless, it is not necessary to remand the case for such a determination, because we find, as a matter of law, that probable cause did exist for the arrest.

The criterion for probable cause to arrest has long been established as, whether at the time of the arrest, the facts and circumstances within the knowledge of the officer, or of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in believing that the suspect has committed or is committing a crime. *Beck v. Ohio,* 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *Commonwealth v. Bailey,* 460 Pa. 498, 333 A.2d 883 (1975); *Commonwealth v. Hill,* 251 Pa.Super. 492, 380 A.2d 887 (1977). Although a strong reason to suspect an individual of committing the crime is insufficient, *Commonwealth v. Mackie,* 456 Pa. 372, 320 A.2d 842 (1974), the test is not one of certainties, but rather of probabilities dealing "with the considerations of everyday life." *Commonwealth v. Dickerson,* 468 Pa. 599, 605, 364 A.2d 677, 681 (1976). It is not equivalent to the "proof beyond a reasonable doubt" standard applied in a criminal trial. *Commonwealth v. Dickerson, supra; Commonwealth v. Jones,* 457 Pa. 423, 322 A.2d 119 (1974); *Commonwealth v. Bradley,* 449 Pa. 19, 295 A.2d 842 (1972). Beyond these general propositions, however, there are no bright line distinctions to guide us in reviewing the action of an arresting officer; thus, each case must be reviewed under its own unique facts and circumstances.

*Commonwealth v. Hill, supra; Commonwealth v. Young-blood,* 241 Pa.Super. 72, 359 A.2d 456 (1976).

 In the present situation, Lamberson was aware that appellee and Elwood boarded the caboose sometime prior to 5:45 p. m. Both contended that they remained there, without visitors, until Lamberson's arrival. The theft of the bacon had occurred at some point after 6:00 p. m., the last time it was established that the lock on the car carrying the bacon was secure. The caboose had been moved to a position some 30–40 feet from the car carrying the bacon at approximately 6:30 p. m. Finally, the bacon was found in the limited confines of a caboose over which appellee and Elwood had exclusive control at the approximate time of the robbery. These known facts, viewed from a common sense perspective, made both Elwood and appellee logical suspects.

Certainly, possession of stolen goods is sufficient to give rise to probable cause to arrest. While it is true that a suspect's mere proximity to stolen goods or contraband is insufficient to sustain a conviction for possession of those goods, *see, e. g., Commonwealth v. Hicks,* 243 Pa.Super. 171, 364 A.2d 505 (1976), nor may guilt be predicated on mere presence at the scene of the crime, *see, e. g., Commonwealth v. Herman,* 227 Pa.Super. 326, 323 A.2d 228 (1974), as was previously noted, the absence of conclusive evidence to convict does not negate the existence of probable cause to arrest. Although appellee places great stress on the fact that Lamberson failed to check for fingerprints on the box of bacon, the circumstances of the incident did not demand such immediate action. The arrest was neither precipitous nor so deficient in normal investigative procedures as to satisfy the requirements of legal malice. Indeed, appellants' suspicions concerning one of the two men were later confirmed.

Finally, it is to be noted that appellee was held for court by a district magistrate and indicted by a grand jury. It has not been suggested that either the justice of the peace or the grand jury was in any way imposed upon or that the evidence was distorted in presentation to them. The action

of both has long been held to be affirmative evidence of probable cause. *See Miller v. Pennsylvania Railroad Co.,* *supra* 371 Pa. at 317, 89 A.2d at 813. What appeared to each of them to be probable cause for prosecution may well have appeared in the same light to appellant.

The judgment and order of the court below are therefore reversed and judgment entered for appellants non obstante veredicto.

SPAETH, J. concurs in the result.

JACOBS, former President Judge, WATKINS, former President Judge, and HOFFMAN, J., did not participate in the consideration or decision of this case.