them to escrow their newly received inheritance.

However, despite their knowledge that other heirs might have a valid claim, appellants spent part of the money received.[9] It appears from the record that FRI promptly notified appellants of the new heirs' claim. Essentially, it was appellants' refusal to return or even escrow any part of the funds that triggered this legal action. Appellees filed their Petition for Review little more than a year after they knew about their claim. We agree with the court that appellees acted diligently, and therefore any prejudice that appellants suffered cannot be attributed to appellees' lack of diligence, but must be attributed to appellants' own actions.

We conclude that the trial court's order was equitable, and did not constitute an abuse of discretion or an error of law.

Order affirmed.

Ayse COSMAS, Appellant

v.

BLOOMINGDALES BROS., INC. a/k/a Bloomingdales and James Coia, Individually and Store Manager for Bloomingdales Bros., Inc. and Helen Bobb, Individually and Security for Bloomingdales Bros., Inc. and Gloria Savoya, Individually and Personnel Manager for Bloomingdales Bros., Inc. and Clarence Turk, Individually and Security for Bloomingdales Bros., Inc. and Diane Terrell, Individually and Store Clerk for Bloomingdales Bros., Inc., Appellees.

Superior Court of Pennsylvania.

Argued Feb. 7, 1995.

Filed May 31, 1995.

9. The master nonetheless found that each appellant still retains a substantial amount of the original inheritance.

Steven M. Dorr, Philadelphia, for appellant.

David F. White, Philadelphia, for appellee.

Before CIRILLO, OLSZEWSKI and HESTER, JJ.

OLSZEWSKI, Judge:

Appellant Ayse Cosmas was an employee of appellee Bloomingdales Bros., Inc. from July 1982 through September 1986. On July 3, 1986, appellant purchased several items from Bloomingdales using the Diners Card of a Mr. John Ryan. Bloomingdales security subsequently found out that John Ryan had passed away on July 1, 1986: two days before appellant made her purchases. During questioning, appellant explained that she and Ryan were having a relationship, and that he had authorized her use of the credit card on this and other occasions. She further stated that various store personnel were aware of the relationship, and of her prior use of Ryan's credit card.

Notwithstanding appellant's explanations, she was suspended and later fired from Bloomingdales. Additionally, Bloomingdales security personnel filed a criminal complaint against appellant, alleging forgery, theft by deception, criminal conspiracy, and receiving stolen property. District Justice M. William Peterson heard the charges on February 15, 1987, and held appellant over for trial. Upon subsequent review, the Montgomery County District Attorney's Office decided to drop all charges against appellant, and her record was expunged.

On October 2, 1987, appellant filed suit against Bloomingdales and six individual employees of Bloomingdales that were involved in this incident. Appellant alleged malicious prosecution, defamation, and interference with contractual relations. Since a 1990 bankruptcy petition barred appellant's suit against appellee Bloomingdales, the Honorable Paul W. Tressler granted summary judgment in favor of Bloomingdales on December 29, 1993. Subsequently, and after further review, Judge Tressler also granted summary judgment in favor of the individual appellees. Appellant appeals the decision to grant summary judgment in favor of four of the individual appellees: James Coia, Clarence Turk, Gloria Savoya and Helen Bobb.[1]

■ Summary judgment is proper when the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there is no genuine issue of material fact. *DeWeese v. Anchor Hocking*, 427 Pa.Super. 47, 48, 628 A.2d 421, 422 (1993). When a trial court is considering a summary judgment motion, it must examine the record in the light most favorable to the nonmoving party. *Id.* On appeal, we will not disturb a trial court's entry of summary judgment unless we find an error of law or a clear abuse of discretion. *Id.*

I.

■ Count I of appellant's complaint contains a claim of malicious prosecution. In order to make out a successful claim of malicious prosecution, a plaintiff must show that "the defendants instituted proceedings without probable cause, with malice, and that the proceedings were terminated in favor of the plaintiff." *Amicone v. Shoaf*, 423 Pa.Super. 281, 285, 620 A.2d 1222, 1224 (1993); *Wainauskis v. Howard Johnson Co.*, 339 Pa.Super. 266, 276, 488 A.2d 1117, 1122 (1985). The trial court granted summary judgment against appellant because it found that, as a matter of law, appellees had probable cause to institute the criminal proceedings against appellant. The primary basis for this finding was the fact that a district justice held appel-

---

1. Defendant Jan Tracy Boyd obtained a Praecipe of Judgment Non Pros on November 2, 1987. Defendant Diane Terrell never responded to this complaint and her whereabouts are unknown. Brief for appellant at 6.

lant over for trial on the charges instituted by appellees.

■ In a malicious prosecution action, the plaintiff has the burden of proving lack of probable cause. *Id.* "Probable cause is defined as '[ ] a reasonable ground of suspicion supported by circumstances sufficient to warrant an ordinary prudent man in the same situation in believing that the party is guilty of the offense.' " *Wright v. Schreffler*, 421 Pa.Super. 428, 430, 618 A.2d 412, 414 (1992) (quoting *Cibrone v. Stover*, 351 Pa.Super. 250, 254, 505 A.2d 625, 627 (1986) (citations omitted)). In certain instances, a defendant can introduce conclusive evidence of the existence of probable cause, thereby defeating plaintiff's claim of malicious prosecution. *E.g., Kelley v. General Teamsters, Chauffeurs and Helpers, Local Union 249*, 518 Pa. 517, 521, 544 A.2d 940, 942 (1988) (actions taken on the advice of counsel, if such actions are taken in good faith and after full disclosure, are conclusively established to be actions taken with probable cause). In many states, one such instance of conclusiveness is a plaintiff's conviction in the underlying criminal action. Even if the conviction is later overturned, it is conclusive proof of the existence of probable cause, unless the convicted party can show fraud or other undue influences at work in the conviction proceedings.[2] *See* Restatement of Torts, 2d § 667(1) (1976). *But see Williams v. City of New York*, 508 F.2d 356 (2d Cir.1974) (stating that a conviction ultimately upset is accorded only the force of prima facie evidence of probable cause).

■ While a conviction may serve as conclusive evidence of the existence of probable cause, the action of a district justice or magistrate in holding the plaintiff over to be tried in court is not similarly conclusive. *See* Restatement of Torts, 2d § 663(2) (a holding over of the accused is simply evidence of probable cause). *See also Miller v. Pennsylvania Railroad Co.*, 371 Pa. 308, 317, 89 A.2d 809, 813 (1952) (stating that a holding over for trial, like a grand jury indictment, was "affirmative evidence of probable cause"); *De Salle v. Penn Central Transportation Co.*, 263 Pa.Super. 485, 492, 398 A.2d 680, 684 (1979) (same). It is true that a holding-over represents a decision by a neutral and experienced judicial officer that the prosecution has made out a prima facie case. *Commonwealth v. Fox*, 422 Pa.Super. 224, 233, 619 A.2d 327, 332 (1993), *appeal denied*, 535 Pa. 659, 634 A.2d 222 (1994). A determination of a prima facie case, however, does not necessarily equal a finding of probable cause such as will bar an action for malicious prosecution.

The definition of prima facie is "[a]t first sight; on the first appearance; on the face of it." Black's Law Dictionary 1071 (6th ed. 1990). Prima facie evidence is defined as "[e]vidence which, standing alone and unexplained, would maintain the proposition and warrant the conclusion." *Id.* These definitions indicate that a preliminary hearing, where the justice or magistrate looks for a prima facie case, will oftentimes barely scratch the evidentiary surface of a case. *See Commonwealth v. Smith*, 436 Pa.Super. 277, 289, 647 A.2d 907, 913 (1994) (stating that a preliminary hearing is "a much less searching exploration into the merits of a case than a trial"). If the individual that

---

**2.** While Pennsylvania law has been less than clear on this point, it appears that we subscribe to this theory, as a general rule. *See Bussard v. Neil*, 616 F.Supp. 854 (M.D.Pa.1985) (a conviction, even if later reversed, was conclusive proof of probable cause); *Martinez v. Korvette*, 335 F.Supp. 886 (E.D.Pa.1971), *affirmed*, 477 F.2d 1014 (3d Cir.1973) (stating that it was not clear whether Pennsylvania found a conviction conclusive on the issue of probable cause, but that such evidence could not be overcome without a showing of fraud or unfairness); *Lynn v. Smith*, 193 F.Supp. 887 (W.D.Pa.1961) (conviction on summary proceeding before justice of the peace was conclusive on the existence of probable cause); *Cooper v. Hart*, 147 Pa. 594, 23 A. 833 (1892) (a

guilty verdict, even if later reversed, was conclusive proof of probable cause). *But see Hamidian v. Occulto*, 854 F.Supp. 350, 354 (M.D.Pa.1994) (refusing to grant summary judgment for defendants on state malicious prosecution claim because conviction by justice of the peace may not conclusively establish probable cause); *MacDonald v. Schroeder*, 214 Pa. 411, 63 A. 1024 (1906) (conviction by jury and subsequent grant of new trial by the judge was not conclusive proof of probable cause); *Cap v. K–Mart Discount Stores, Inc.*, 357 Pa.Super. 9, 13, 515 A.2d 52 (1986) (disagreeing with *Lynn v. Smith* and holding that conviction for summary offense before justice of the peace was not conclusive evidence of probable cause).

initiated the prosecution was hasty or acted with lack of deliberation or care, this will not necessarily be apparent at a preliminary hearing where the only question is whether there is a prima facie case. Such haste or lack of care, however, may be an important issue in the search for probable cause in a malicious prosecution action. *Hugee v. Pennsylvania Railroad Co.*, 376 Pa. 286, 289, 101 A.2d 740, 742–43 (1954) (finding lack of probable cause, notwithstanding a holding over by a magistrate, where defendant acted with unwise haste and lack of due care in prosecuting plaintiff); *Wainauskis*, 339 Pa.Super. at 278, 488 A.2d at 1123 (upholding jury finding of lack of probable cause, notwithstanding a holding over by a magistrate, because the jury could have found that defendant acted with unwise haste and lack of due care).

 Unlike a conviction, the decision to hold someone over is a cursory determination, often made rather quickly and with an eye toward allowing the case to go forward if there is any arguable evidence of guilt. A preliminary hearing does not offer the full panoply of procedural safeguards, and the credibility of witnesses is not at issue. In this sense, a decision to hold someone over is more like a grand jury indictment, and less like a full-blown conviction. For this reason, the Restatement and the Pennsylvania Courts have both treated a decision to hold over, not as conclusive, but rather as affirmative evidence of the existence of probable cause. *Miller*, 371 Pa. at 317, 89 A.2d at 813;

*De Salle*, 263 Pa.Super. at 492, 398 A.2d at 684; Restatement of Torts, 2d § 663(2).

 As affirmative evidence, a holding over is to be considered along with all of the other evidence offered by the parties on the issue of probable cause. *See Kelley*, 518 Pa. at 523, 544 A.2d at 943; *Miller*, 371 Pa. at 317, 89 A.2d at 813; *De Salle*, 263 Pa.Super. at 492, 398 A.2d at 684. The weight to be given to the holding-over determination depends on whether it was reached by fair and complete means, or whether it was a product of some act or omission of defendants that may have tainted the proceedings. *See Wainauskis*, 339 Pa.Super. at 278, 488 A.2d at 1123–24 (finding that holding of the plaintiff for trial is not competent evidence of probable cause where the action was tainted by inaccurate or incomplete evidence given by the defendants); *see also Miller*, 371 Pa. at 317, 89 A.2d at 813; *De Salle*, 263 Pa.Super. at 492, 398 A.2d at 684. If the holding-over proceeding was not impeached in any way, it will constitute very weighty evidence and the plaintiff will bear a hefty burden in trying to overcome it.[3]

In the present case, District Justice M. William Peterson heard evidence on February 15, 1987, and decided to hold appellant over for trial. While this determination is not conclusive, it is affirmative evidence that appellees did in fact have probable cause to initiate the criminal proceedings against appellant. Since appellant has not alleged any procedural infirmities, or that appellees lied or withheld evidence at the preliminary hearing,[4] that proceeding stands untainted and is

---

3. This treatment, where evidence of a holding over is not conclusive as to probable cause, but is weighty if unimpeached, comports with our policy on the tort of malicious prosecution. Malicious prosecution "involves a conflict between the interests of society in law enforcement as opposed to the individual interest in freedom from false accusation." *Kelley*, 518 Pa. at 521, 544 A.2d at 942. It is often said that the interest of society in preserving order is the more important concern. *Id.* Thus, we must be careful not to discourage lawful proceedings against those who are apparently guilty. *Id.* At the same time, however, the general public is entitled to protection from abuse of authority and from the embarrassment, humiliation, and expense of being wrongfully prosecuted for a crime. *Neczypor v. Jacobs*, 403 Pa. 303, 308, 169 A.2d 528, 531 (1961); *Wainauskis*, 339 Pa.Super. at 278, 488

A.2d at 1123. Therefore, if immediate action is not required, the protection of the individual demands precautions such as adequate preliminary investigation. *Id.* Given these competing interests, we are bound to consider a decision to hold over for trial as weighty, but not necessarily conclusive, evidence of the existence of probable cause.

4. Appellant argues that appellees Bobb and Turk knew or should have known about her relationship with Ryan and her prior authorized use of his Diners Card. Brief for appellant at 17–22. All of this evidence was presented to the district justice, however, and was considered before making the determination to hold appellant over for trial. R. Exhibit H at 53–56; R. Exhibit I at 15–17. There is simply no contention that appel-

considered weighty evidence in the probable cause determination. In addition, the following facts are not disputed: Ryan's widow called the store complaining about the unauthorized purchases on her husband's credit card; investigation revealed that appellant made those purchases; the purchases were made two days after Ryan died; and appellant knew that Ryan was dead when she purchased the items in question. All of this taken together is weighty evidence that a reasonable person would believe that appellant had committed a crime.

 In opposition, appellant asserts that appellees knew or should have known that she had authorization to make purchases on behalf of Ryan in the past, and that appellees should have believed her, or investigated further, after she told them that Ryan had authorized the July purchases at issue here. Appellant's past authorization has little bearing on this present allegation of unauthorized use, where the cardholder had passed away and appellant knew of his demise. As for appellant's claim that she had authorization for these particular purchases, she did not offer any proof of this fact. In contrast to her unsubstantiated assertions of authorization, appellees knew that Ryan had died two days before these purchases were made, and that his closest living relative, his wife, stated that they were not authorized. The information available at the time was sufficient to give rise to a reasonable suspicion that appellant had made these purchases without authorization. These facts appeared to District Justice Peterson to establish probable cause, and they may well have appeared in the same light to appellees. Therefore, we agree with the trial court that, as a matter of law, appellant has failed to meet her burden of establishing lack of probable cause.[5]

## II.

As to Counts II and III of appellant's complaint, the trial court granted summary judgment because it found that appellant failed to plead a cause of action against the individual defendants. The court wrote, "[n]owhere in the Complaint did Plaintiff plead in the alternative that the individual Defendants acted other than as agents of Defendant Bloomingdales." Opinion 8/2/94 at 4. This statement is misleading, however, as appellant need not plead that defendants acted other than as agents in order to make out individual liability.

 It has long been a basic tenet of agency law that "[a]n agent who does an act otherwise a tort is not relieved from liability by the fact that he acted at the command of the principal or on account of the principal." *Deaktor v. Fox Grocery Co.*, 332 F.Supp. 536, 542 (W.D.Pa.1971), *affirmed*, 475 F.2d 1112 (1973) (quoting Restatement of Agency, 2d § 343 (1957)); *see also Valley Forge Golf v. L.G. DeFelice & Son*, 124 F.Supp. 873, 875 (E.D.Pa.1954); *First National Bank of Blairstown v. Goldberg*, 340 Pa. 337, 340, 17 A.2d 377, 379 (1941); *Muldowney v. Middleman*, 176 Pa.Super. 75, 77, 107 A.2d 173, 175 (1954). Thus, the question is not whether the individual defendants were acting as agents of Bloomingdales, but whether the individual defendants actually committed a tort. If so, they are liable for that tort regardless of their agency or employment relationship.

Appellees further obscure the issue by phrasing it in terms of whether they were acting within the scope of their employment. After answering this question affirmatively, appellees assert that they cannot be subject to suit individually. This is simply not an accurate statement.

 As our Supreme Court stated in *Wicks v. Milzoco Builders, Inc.*, "whether appellees acted within the scope of their authority as corporate officers is irrelevant. The fact that an officer is acting for a corporation also may make the corporation vicari-

---

lees lied or withheld evidence during that proceeding.

**5.** While the issue of probable cause is one for the court to decide as a matter of law, a determination of disputed facts should be left for a jury. *Bruch v. Clark*, 352 Pa.Super. 225, 228, 507 A.2d

854, 856 (1986). Appellant asserts that there are issues of fact here that require a jury determination. After review of the record, however, we disagree. In this case, the facts that are relevant to the issue of probable cause are not in dispute.

ously or secondarily liable under the doctrine of respondeat superior; it does not however relieve the individual of his responsibility.'" 503 Pa. 614, 620, 470 A.2d 86, 89 n. 5 (1983) (quoting *Donsco, Inc. v. Casper Corp.*, 587 F.2d 602, 606 (3d Cir.1978)). Whether an employee is or is not acting within the scope of his or her employment, therefore, is only relevant in determining whether the employer can be secondarily liable for the employee's tort. In either case, the employee himself remains liable for his own torts.

Notwithstanding the above, appellees will escape liability if appellant failed to plead with sufficient particularity that she was seeking individual liability. *See* Pa.R.C.P. 1019. It appears that this is what the trial court was alluding to when it stated that appellant did not plead sufficient facts for individual liability. *See* Opinion 8/2/94 at 4. In Counts II and III, appellant does not specifically state, as she does in Count I, that she is seeking to hold the individual appellees jointly and severally liable with Bloomingdales. Nevertheless, we believe that the complaint sufficiently identifies the personal liability that it seeks in at least one instance.

■ On the Count II defamation claim, appellant sufficiently pleads individual liability against appellee Helen Bobb. In paragraph 66, appellant alleges that, "[t]he defendants, and more specifically, defendant Helen Bobb, contriving to deprive plaintiff of her good name ... did, utter, state and publish the following false and defamatory words of and concerning the plaintiff and intending to injure the plaintiff...." R.R. at 23a. In paragraph 70, appellant further alleges that, "[t]he statements ... were deliberately and recklessly published ... by the defendant BLOOMINGDALE BROS., INC. and defendant HELEN BOBB...." R.R. at 25a. These allegations specifically identify Bobb as a separate and distinct defendant and seek to hold her liable for her own alleged tortious conduct. It is of no moment that appellant subsequently alleges that Bobb was acting within the scope of her employment at Bloomingdales. This additional allegation serves only to open the door for potential secondary liability on the part of Bloomingdales. It does not serve to release

Bobb from liability for what is alleged to be a tortious act on her part. Given that plaintiff has properly alleged Bobb's individual liability, and that material issues of genuine fact still exist as to whether Bobb's actions were indeed tortious, summary judgment was improperly granted as to Bobb under Count II.

■ Appellant has failed to allege individual liability as to the remaining appellees under Count II. Bobb is the only appellee that is actually accused of making a defamatory statement. The other appellees are merely accused of holding relevant supervisory positions. As to these individual appellees, appellant has failed to allege facts to support individual liability and summary judgment was properly granted.

■ Regarding Count III, we need not determine whether appellant sufficiently pled individual liability as to all of the individual appellees. We find that summary judgment was properly granted as to all of them because, as the trial court alternatively noted, employees acting within the scope of their employment cannot be liable on contractual interference claims based on a contract between a co-employee and the mutual employer. *Rutherfoord v. Presbyterian–University Hospital*, 417 Pa.Super. 316, 332, 612 A.2d 500, 508 (1992) (holding that where a contractual interference claim is based on contract with employer, and that contract is terminated by an agent of the employer acting within the scope of his agency, there is no third party and no claim will lie).

Since we find that summary judgment was properly granted on Counts I and III as to all appellees, and on Count II as to all appellees except Helen Bobb, we affirm the trial court's order in those regards. We reverse as to the defamation claim against appellee Helen Bobb, as issues of material fact still need to be resolved.

Order affirmed in part, reversed in part. Remanded for further proceedings consistent with this opinion. Jurisdiction relinquished.