Harry B. STRICKLAND, Appellant,

v.

The UNIVERSITY OF SCRANTON and
Indira Srivastava, Appellees.

Superior Court of Pennsylvania.

Argued March 18, 1997.

Filed Sept. 4, 1997.

Peter G. Loftus, Waverly, for appellant.

Joseph T. Wright, Jr., Scranton, for University of Scranton, appellee.

Walter T. Grabowski, Scranton, for Srivastava, appellee.

Before CAVANAUGH, HUDOCK and HESTER, JJ.

HUDOCK, Judge:

In this appeal, Harry Strickland (Appellant) contends that the trial court erred in granting the preliminary objections of Appellee University of Scranton (the University) and the motions for summary judgment by both the University and Appellee Indira Srivastava (Appellee) in response to Appellant's multi-count complaint. We affirm.

The facts and procedural history may be summarized as follows: Appellant was employed by the University from 1963 through 1988 in various capacities. He became Dean of the Graduate School in 1969 and joined the University's administration in 1983. By 1983, Appellant had also achieved the status of tenured faculty member. On December 11, 1980, Appellee's Husband, a fellow faculty member at the University, was killed in an automobile accident. Thereafter, Appellee loaned a sum of money to Appellant. A dispute arose between them as to whether Appellant had repaid the loan and, in October, 1987, Appellee filed a lawsuit to collect these monies. On December 21, 1987, Appellant was suspended by the University. Sometime in early 1988, the Lackawanna County District Attorney's Office commenced a criminal investigation into Appellant's financial dealings with Appellee. In February, 1988, Appellant was removed from his administrative positions at the University. At that time, he was told that his administrative contract was not going to be renewed. During this same time period, the provost of the University told Appellant that, unless he resigned from employment, a formal dismissal would be initiated as provided for in the faculty handbook. On June 6, 1988, Appellant executed a general release with the University, after several months of negotiations. According to its terms, in consideration of $120,000.00, Appellant agreed to relinquish all causes of action, suits, contract rights, agreements, promises and judgments against the University.

In March, 1991, Appellant filed a ten-count complaint against Appellee and the University. The complaint included the following

counts against Appellee: Count I—malicious prosecution; Count II—false arrest; Count III—intentional interference with contractual relations; and Count IV—intentional interference with potential contractual relations. Appellant included the following counts against the University: Count V—breach of contract; Count VI—wrongful discharge; and Count VII—promissory estoppel. As to both Appellee and the University, Appellant filed the following counts: Count VIII—invasion of privacy; Count IX—intentional infliction of emotional distress; and Count X—civil conspiracy. In addition to compensatory damages, as to all counts Appellant requested punitive damages.

 On April 2, 1991, the University filed preliminary objections in the form of a demurrer to Counts V through X of the complaint along with a supporting brief. By order dated April 3, 1991, the trial court granted the preliminary objections as to Counts V, VI, IX, and X, but denied the preliminary objections as to Counts VII and VIII.[1] Appellant filed a notice of appeal to this Court which quashed the appeal as interlocutory. *Strickland v. University of Scranton,* (No. 01619 Philadelphia 1992, filed October 14, 1992). Following the completion of discovery, the University, on March 8, 1995, filed a motion for summary judgment on Counts VII and VIII. On May 22, 1995, Appellee filed a motion for summary judgment on Counts I through IV, and VIII of the complaint. The University's motion was granted on October 18, 1995, and Appellee's motion was granted on July 2, 1996. This direct appeal followed. We will address the trial court's disposition of each count in the order they appear in the complaint.[2] Initially, however, we note the applicable standards of review for granting preliminary objections in the form of a demurrer and summary judgment. Our Supreme Court has stated the standard of review for preliminary objections as follows:

> All material facts set forth in the complaint as well as all inferences reasonably deducible therefrom are admitted as true. The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it. *Mahoney v. Furches,* 503 Pa. 60, 66, 468 A.2d 458, 461–62 (1983).

*McMahon v. Shea,* 547 Pa. 124, 129, 688 A.2d 1179, 1181 (1997). Our Supreme Court has summarized the manner of reviewing grants of summary judgment as follows:

> In reviewing the trial court's grant of summary judgment, "[a]n appellate court may disturb the order of the trial court only where there has been an error of law or a manifest abuse of discretion. Notwithstanding, the scope of review is plenary and the appellate court shall apply the same standard for summary judgment as the trial court." *Cooper v. Delaware Valley Medical Ctr.,* 539 Pa. 620, 632, 654 A.2d 547, 553 (1995).

*BLaST Intermediate Unit 17 v. CNA Insurance Companies,* 544 Pa. 66, 70, 674 A.2d 687, 689 (1996).

 Count I of Appellant's complaint asserts a claim for malicious prosecution against Appellee. Summary judgment was granted in favor of Appellee as to this count

---

1. The court below and the parties have treated the grant of preliminary objections as also dismissing Counts IX and X against Appellee as well as the University.

2. The University argues that these claims are not properly before us because Appellant failed to include the April, 1991, order granting its preliminary objections in its notice of appeal. While, technically, the University is correct, it is clear from the record in the present case that Appellant had filed an earlier appeal as to these claims that was quashed as interlocutory. To deny Appellant review of these claims would be elevating from over substance. It also argues that none of the issues raised in the argument portion of Appellant;s brief should be considered because he failed to include a Statement of Questions Involved, Pa.R.A.P., Rule 2116, 42 Pa.C.S.A. We will overlook this defect. *See Savoy v. Savoy,* 433 Pa.Super. 549, 551–53, 641 A.2d 596, 598 (1994) (although litigant failed to provide a separate statement of the questions involved, issues raised in argument section of appellate brief suggested specific issues to be reviewed such that appellate review was not impeded).

by order dated July 1 or 2, 1996.[3] In his complaint, Appellant averred that Appellee "initiated criminal proceedings without probable cause for the sole reason of affording [Appellant] to personal gain [sic], to wit, collecting an alleged debt which she knew had been repaid. Said action was done with malice and with the intent to harm [Appellant]." Complaint, 3/12/91, at ¶ 40. In essence, Appellant claims that a genuine issue of material fact existed as to whether Appellee initiated the criminal action solely to collect the debt she alleged he owed her such that summary judgment should have been denied. We cannot agree. To establish a successful claim of malicious prosecution, a plaintiff must show that the defendant "instituted proceedings without probable cause, with malice, and that the proceedings were terminated in favor of the plaintiff." *Cosmas v. Bloomingdales Bros., Inc.,* 442 Pa.Super. 476, 481, 660 A.2d 83, 85 (1995) (citations omitted). Probable cause in the context of the tort of malicious prosecution does not require proof beyond a reasonable doubt, but rather, is defined as "a reasonable ground of suspicion supported by circumstances sufficient to warrant an ordinary prudent man in the same situation in believing that a party is guilty of the offense." *Cosmas,* 442 Pa.Super. at 482, 660 A.2d at 86 (citations omitted). A showing of probable cause to institute proceedings against a plaintiff establishes an absolute defense against an action for malicious prosecution, which renders immaterial the issue of whether the prosecutor's motive is malicious or otherwise. *Bruch v. Clark,* 352 Pa.Super. 225, 228–29, 507 A.2d 854, 856 (1986). "[W]here the evidence is undisputed or only probable cause is a matter for the court and not the jury." *Jaindl v. Mohr,* 432 Pa.Super. 220, 228, 637 A.2d 1353, 1357 (1994), *aff'd,* 541 Pa. 163, 661 A.2d 1362 (1995) (citation omitted).

■ In the present case, the record demonstrates that Appellee provided Appellant with $19,000 for "investment purposes" and she never received repayment or even an accounting as to the return on her investment. Relying on the advice of counsel, Appellee did file a private criminal complaint, an investigation was initiated by the Attorney General's office, theft charges were filed against Appellant, and, ultimately, the criminal prosecution was not pursued. "Criminal proceedings initiated upon advice of counsel are conclusively presumed to be supported by probable cause when the advice of counsel was sought in good faith and the advice was given after full disclosure of the facts to the attorney." *Kelley v. General Teamsters, Chauffeurs, and Helpers, Local Union 249,* 518 Pa. 517, 521, 544 A.2d 940, 942 (1988). Thus, as no genuine issue of material fact with respect to probable cause exists to support the criminal proceedings as to Appellant's claim of malicious prosecution, summary judgment was properly granted. *See Jaindl,* 432 Pa.Super. at 226–30, 637 A.2d at 1357–58 (summary judgment properly granted where employer and co-workers had probable cause to initiate criminal proceedings against employee based upon suspicion of theft of employer's funds); *Cibrone v. Stover,* 351 Pa.Super. 250, 252–55, 505 A.2d 625, 626–27 (1986) (bakery supplier, who consulted his attorneys and was told passing of bad checks could constitute a crime, and whose criminal complaints were reviewed and approved by the district attorney's office, had probable cause to believe bakery manager was guilty of passing bad checks and was thus not liable for malicious prosecution).

■ In the second count of Appellant's complaint, he asserts a claim of false arrest against Appellee and, by order dated July 2, 1996, summary judgment was granted in favor of Appellee. We agree that Appellant has failed to establish that a genuine issue of material fact exists as to this claim. An action for false arrest requires that the process used for the arrest was void on its face or that the issuing tribunal was without jurisdiction; it is not sufficient that the charges were unjustified. *See LaFrankie v. Miklich,*

---

3. Appellee's motion for summary judgment was granted by the trial court as to all remaining claims against her on the additional basis that, in accordance with Lackawanna County Local Rule 1028, Appellant failed to file a timely brief. We need not address the propriety of the local rule given the fact that the trial court stated its conclusion that the record demonstrated no genuine issue as to any material fact.

152 Pa.Cmwlth. 163, 168 n. 2, 618 A.2d 1145, 1148 n. 2 (1992); *Lynch v. Johnston,* 76 Pa.Cmwlth. 8, 11–13, 463 A.2d 87, 89 (1983). Appellant has neither made such assertions in his complaint nor created a genuine issue by his deposition testimony. Thus, the grant of summary judgment as to this count was proper.

In his third and fourth count, Appellant claims that Appellee intentionally interfered with the actual or potential contractual relationship Appellant had with the University and future employers.[4] Appellant claims that Appellee's actions in initiating both civil and criminal proceedings against him was done for the purpose of placing his job at the University in jeopardy and forcing him to negotiate with her. Additionally, Appellant alleges that Appellee knew or should have known that her actions against him would cause the University to terminate his employment. Appellant bases his claim for interference with potential contract relationships on the publication of an article in a local newspaper on June 27, 1989. In the article, Appellee is quoted as saying that she was unhappy the district attorney's office had not pursued the criminal charges filed against him. At his deposition, Appellant testified that this article caused him to lose the opportunity of a full-time faculty position with Lackawanna Junior College.

■ The elements of a cause of action for intentional interference with a contractual relation, whether existing or prospective, are as follows:

(1) the existence of a contractual, or prospective contractual relation between the complainant and a third party;

(2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring;

(3) the absence of privilege or justification on the part of the defendant; and

(4) the occasioning of actual legal damage as a result of the defendant's conduct.

*Pelagatti v. Cohen,* 370 Pa.Super. 422, 434, 536 A.2d 1337, 1343 (1987) (citations omitted). *See also Small v. Juniata College,* 452 Pa.Super. 410, 417, 682 A.2d 350, 354 (1996) (same).

■ In determining whether a particular course of conduct is improper for purposes of setting forth a cause of action for intentional interference with contractual relationships, or, for that matter, potential contractual relationships, the court must look to section 767 of the Restatement (Second) of Torts. This section provides the following factors for consideration: 1) the nature of the actor's conduct; 2) the actor's motive; 3) the interests of the other with which the actor's conduct interferes; 4) the interests sought to be advanced by the actor; 5) the proximity or remoteness of the actor's conduct to interference, and 6) the relationship between the parties. *Triffin v. Janssen,* 426 Pa.Super. 57, 62–64, 626 A.2d 571, 574 (1993), *alloc. den.,* 536 Pa. 646, 639 A.2d 32 (1994).

■ Considering these factors, we conclude that summary judgment was properly granted as to the claims. The fact that Appellee pursued or initiated actions, both civil and criminal, in an attempt to recover the monies that she had loaned to Appellant, resulting in unfavorable publicity to Appellant and adversely affecting his position at the University, does not create a genuine issue of material fact as to Appellee's intent to interfere with Appellant's continued employment at the University. While Appellee, in her attempts to recoup the funds loaned to Appellant, did contact the University's president on one occasion, Appellant has not demonstrated a genuine issue of material fact on the question of whether it was reasonably probable that his contract with the University would have been renewed in the absence of this one contact. *See Glenn v. Point Park College,* 441 Pa. 474, 480–81, 272 A.2d 895, 898–99 (1971). As to Appellee's alleged interference with potential contractual relationships with other universities, we cannot conclude that Appellant has raised a genuine issue of material fact. In the newspaper

---

4. In his brief, Appellant also argues that the University interfered with potential contractual relationships he may have had with other univer-
sities. A review of the complaint, however, reveals that this cause of action was raised only against Appellee.

article relied upon by Appellant, Appellee merely commented on her dissatisfaction with the district attorney's failure to pursue the criminal charges lodged against Appellant. The newspaper's decision to publish that article and interview Appellee in the process, as well as the resultant publicity, does not raise a genuine issue of material fact as to the intent on the part of Appellee to interfere with any potential contractual relationships being pursued by Appellant.

The dismissal of counts five and six against the University by way of the grant of its preliminary objections in the nature of a demurrer, as well as the dismissal of count seven against the University in which Appellant asserted promissory estoppel and the trial court granted summary judgment, may be addressed together because, as a result of negotiations regarding the cessation of his employment, Appellant signed a release with the University. The release provided that, in consideration of the sum of $120,000.00, Appellant agreed to relinquish all causes of action, suits, contract rights, agreements, promises and judgments against the University. Contrary to Appellant's assertion on appeal, he has not created a genuine issue of material fact as to the invalidity of the release on the ground that he executed it under both economic and physical duress.

 The effect of a release is determined by the ordinary meaning of the language contained therein. *Buttermore v. Aliquippa Hospital*, 522 Pa. 325, 328–30, 561 A.2d 733, 735 (1989). A release not procured by fraud, duress, or mutual mistake is binding between the parties. *Lanci v. Metropolitan Insurance Company*, 388 Pa.Super. 1, 4–6, 564 A.2d 972, 974 (1989). At his deposition, Appellant expressed the pressure he was facing to sign the release as follows:

It would be a normal person's evaluation that if you take the record, the pressure of the publicity in the newspaper, the pressure of interference in a contractual summation of one's career, by outsiders, alerted by the agents of the university, that you have a depressed person.

N.T., 5/28/93, at 86–87. The fact that Appellant was faced with an unpleasant choice does not establish duress in the legal sense.

Duress is defined as "that degree of restraint or danger, either actually inflicted or threatened and impending, which is sufficient in severity or apprehension to overcome the mind of a person of ordinary firmness." *Carrier v. William Penn Broadcasting Co.*, 426 Pa. 427, 431, 233 A.2d 519, 521 (1967) (citation omitted). Where people deal with each other on equal terms and at arm's length, there is a presumption that the person alleging duress possesses ordinary firmness; in the absence of threats or actual bodily harm, there can be no duress where the contracting party is free to consult with counsel. *Id.* In the present case, there is no evidence that Appellant executed the release under any degree of duress. Rather, the record demonstrates the University and Appellant engaged in negotiations regarding his termination for a period of five months, and, although Appellant was free to consult with counsel, he chose not to do so. *See Degenhardt v. Dillon Co.*, 543 Pa. 146, 154, 669 A.2d 946, 950 (1996) (party who has reasonable opportunity to consult with counsel before entering into contract cannot later invalidate it by claiming economic duress).

In count eight of his complaint, Appellant asserts that both Appellee and the University invaded his privacy by portraying him in a false light and giving publicity to his private life. The trial court granted summary judgment as to both defendants. The pertinent portions of Appellant's complaint read:

59. [Appellee and the University] invaded [Appellant's] privacy as follows:

a. They put out publicity placing [Appellant] in a false light in that they caused false and misleading articles to be published in the newspapers, . . .

b. Gave publicity to the private life of [Appellant] which was totally false and misleading in that they caused publicity indicating that [Appellant] had robbed [Appellee] and done other acts for which he was sued;

c. Notified [Appellant's] ex-wife and [Appellee] and/or their agents, servants and/or employees of the pending negotiations so that they could undertake actions

to enforce claims to which they were not otherwise entitled.

Complaint, 3/12/91, at 15, ¶ 59.

■■■■■■ False light invasion of privacy includes "publicity that unreasonably places the other in a false light before the public." *Curran v. Children's Service Center of Wyoming County, Inc.*, 396 Pa.Super. 29, 38, 578 A.2d 8, 12 (1990). Moreover, "[i]t is only when there is such a major misrepresentation of his character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable man in his position, that there is a cause of action for invasion of privacy." *Id.* at 39–40, 578 A.2d at 13. No such allegations were made by Appellant. The elements to be proven are publicity, given to private facts, which would be highly offensive to a reasonable person and which are not of legitimate concern to the public. *Harris by Harris v. Easton Publishing Company*, 335 Pa.Super. 141, 154–56, 483 A.2d 1377, 1384 (1984). Appellant has not demonstrated that either the University or Appellee controlled the content or decision to publish any article concerning Appellee's lawsuit against him, a matter which was of public record and not a "private fact". *Id.* Thus, Appellant has not raised a genuine issue of material fact as to this count. Finally, the fact that counsel for Appellee and Appellant's estranged wife were notified concerning the pending settlement with the University does not aid in the establishment of an invasion of privacy claim since both of these women, one as a judgment creditor, the other as an ex-spouse, had an interest in the monies Appellant was to receive in return for the University's release.

■■■■■■ As to count nine of Appellant's complaint, which alleged the intentional infliction of emotional distress, the trial court granted the preliminary objections filed by the University.[5] Based on the present record, the dismissal of this claim was appropriate. "[I]t is for the court to determine, in the first instance, whether the actor's conduct can reasonably be regarded as so extreme and outrageous as to permit recovery." *Reimer v. Tien,* 356 Pa.Super. 192, 198–200, 514 A.2d 566, 569 (1986). In defining the outrageous conduct requirement, this Court has stated:

> Liability has been found only where the conduct has been *so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.* Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous."

*Small,* 452 Pa.Super. at 420, 682 A.2d at 355 (*quoting Jones v. Nissenbaum, Rudolph and Seidner,* 244 Pa.Super. 377, 383, 368 A.2d 770, 773 (1976)) (emphasis in original). The trial court found that Appellant failed to allege sufficient facts to demonstrate that the conduct of Appellee or the University was outrageous. We agree. Appellee merely sought to collect monies she believed were owed to her and, in the process of the subsequent civil suit and filing of criminal charges, the University decided to terminate Appellant from its employment. We cannot, as a matter of law, find either course of conduct to demonstrate the amount of outrageousness required to allow recovery for the intentional infliction of emotional distress.[6]

■■■■■■ In the final count of his complaint, Appellant asserts a cause of action for civil conspiracy against Appellee and the University. The trial court properly granted the University's preliminary objection in the nature of a demurrer as to this claim. In essence, Appellant alleges that the University and Appellee conspired with one another to intentionally harm him. To state a cause of action for civil conspiracy, the following elements are required: "(1) a combination of

---

5. It appears that, although preliminary objections were filed only by the University, the trial court and the parties treated the grant as to this count, as well as to Count X, to apply to both parties.

6. Like the *Small* panel, because we find Appellant has not alleged outrageous conduct by Appellee or the University, we need not discuss whether the tort of intentional infliction of emotional distress is actually recognized in Pennsylvania. *See Small,* 452 Pa.Super. at ——, 682 A.2d at 355.

two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." *Smith v. Wagner,* 403 Pa.Super. 316, 320–24, 588 A.2d 1308, 1311–12 (1991). Proof of malice or an intent to injure is essential to the proof of a conspiracy. *Skipworth by Williams v. Lead Industries Association,* 547 Pa. 224, ——, 690 A.2d 169, 174 (1997). Appellant has failed to allege any facts in his complaint to support the elements of his claim.[7]

Order affirmed.

---

**7.** Because we found that Appellant has failed to establish each of the causes of action raised in his complaint, we need not address the trial court's dismissal of his claim for punitive damages.