**Robert LOHMAN, Plaintiff,**

v.

**TOWNSHIP OF OXFORD, Oxford Township Police Department, and Michael O'Mara, Defendants.**

Civ. A. No. 91–7037.

United States District Court, E.D. Pennsylvania.

Feb. 23, 1993.

Anthony J. Martino, Zito, Martino and Karasek, Bangor, PA, for plaintiff.

Robert G. Hanna, Marshall, Dennehey, Warner, Coleman & Coggin, Philadelphia, PA, for defendants.

## MEMORANDUM

HUYETT, District Judge.

This action pursuant to 42 U.S.C. § 1983 arises out of a criminal complaint filed by Defendant O'Mara against Plaintiff Robert Lohman charging Plaintiff with felony murder and burglary, and concerns Plaintiff's arrest and imprisonment for thirty-six days. Plaintiff is a citizen of Pennsylvania. Defendant Township of Oxford is located in Warren County, New Jersey. Defendant Michael O'Mara is a police officer of Defendant Oxford Township Police Department and a citizen of New Jersey.

Plaintiff commenced this action alleging violations of his rights under the United States Constitution. Plaintiff also asserted state law claims. The following claims remain: Plaintiff's section 1983 claim against Defendants Township of Oxford and Oxford Township Police Department and Plaintiff's state law claims against Defendant O'Mara. Defendants now move for summary judgment on all remaining claims.

### I. Facts

The following are the pertinent facts viewed in a light most favorable to Plaintiff. On October 10, 1990 Alice Skov and John Bell were murdered in their residence in Oxford Township, Warren County, New Jersey. On October 11, 1990 Defendant O'Mara arrived at the residence and discovered the bodies. Alice Skov had multiple gunshot wounds to the head and John Bell had multiple stab wounds and a gunshot wound to the face. The Warren County Prosecutor's Office and the New Jersey State Police began investigating the murders. Law enforcement personnel searched the residence and discovered a spent .22 caliber shell casing, scissors that appeared to be covered with blood, and cigarette butts.

On October 13, 1990, Bobby Brown, boyfriend of Coleen Alexander, a grandniece of Alice Skov, gave a statement in which he denied that he had anything to do with the murders. Brown contradicted himself and also gave information that conflicted with information given by George Bell, John Bell's brother, and Coleen Alexander. Brown failed the polygraph examination and later that day confessed to being at the Bell/Skov residence on October 10, 1990 with a friend named Robert Lohman. Brown stated that Lohman killed the two individuals. Brown was placed under arrest.

On October 13, 1990 Brown gave a second statement in which he admitted being present with Robert Lohman during the burglary of the Bell/Skov residence and the subsequent murder of the victims. Brown stated that Lohman shot the victims, that there were blood spots on Lohman's hands, and that he and Lohman left the crime scene together in Brown's car. He stated that he smoked a cigarette while in the residence. Brown guessed that the gun was a .22 caliber revolver. He also stated that Lohman fired a total of three shots. On October 14, 1990 at 12:45 a.m. law enforcement personnel arrived at the residence of Stephen and Violet Krouch, where Brown and Alexander lived. While some officials conducted a consent search, two others obtained a taped statement from Coleen Alexander who admitted that she lied the day before when she gave information to the officers. During the consent search of the Krouch residence, officers discovered and seized fifteen .22 caliber long rifle rounds found in a night stand used by Bobby Brown. They also discovered, but did not seize, a .22 caliber rifle owned by Stephen Krouch.

On October 14, 1990 Defendant O'Mara prepared a criminal complaint against Plaintiff charging him with burglary and felony murder. Based upon this complaint the Oxford Township Municipal Court issued an arrest warrant for Plaintiff. Plaintiff was characterized as a fugitive from justice and a Pennsylvania court issued a warrant for Plaintiff's arrest. Later that day, Pennsylvania and New Jersey law enforcement personnel arrived at Plaintiff's residence in Northampton County, Pennsylvania, and arrested Plaintiff. The officers received consent to search the house and seized a .22 caliber handgun underneath the mattress in the bedroom used by Robert Lohman, Sr. and a

sweat suit with what appeared to be two spots of blood from a common area on the second floor. The officers took Plaintiff to the county jail in Easton, Pennsylvania.

On October 15, 1990 Bobby Brown told law enforcement officers that his confession was not true and that he would not testify against Robert Lohman.

On October 19, 1990 the .22 caliber handgun seized from the Lohman residence was submitted to the New Jersey State Police laboratory and preliminary information from the laboratory indicated that the weapon seized did not fit the known ballistics evidence derived from the projectiles recovered at the scene of the murder. On November 2, 1990 the New Jersey State Police laboratory positively identified Stephen Krouch's .22 caliber rifle as the weapon used to fire the two spent shell casings found on the floor of the first floor bedroom containing the body of Alice Skov.

On November 8, 1990 Coleen Alexander admitted to her participation in the burglary of the Bell/Skov residence. She stated that she accompanied Bobby Brown to the Bell/Skov residence on October 10, 1990 after Brown had threatened her with the .22 caliber rifle owned by Stephen Krouch and that Brown shot Skov and stabbed and shot Bell using the .22 caliber rifle.

On November 21, 1990, Robert Lohman gave a statement at the Warren County Prosecutors Office saying that he was not involved in the crimes that occurred on October 10, 1990. He gave a detailed account of his activities on October 10 and 11, 1990. On November 27, 1990 Lohman submitted to a polygraph examination. The examiner found that Lohman was truthful. The charges against Plaintiff were formally withdrawn.

## II.  Standard for Summary Judgment

■  Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Where the movant is the defendant, or the party without the burden on the un-

derlying claim, as here, the movant does not have an obligation to produce evidence negating the opponent's case. The moving party rather must demonstrate that there is a lack of any evidence to support the nonmovant's claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). Once the movant satisfies this initial burden, the proponent of the claim must demonstrate to the court that there is sufficient evidence from which a jury might return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The evidence presented must be significantly probative, not merely colorable. The Court does not resolve questions of disputed fact, but rather decides whether there is a genuine issue of material fact which must be resolved at trial. *Id.* The Court must view the facts in the light most favorable to the nonmoving party, and reasonable doubt as to the existence of a genuine issue of material fact is to be resolved against the moving party.

## III.  The Section 1983 Claim

### A.  *Alleged Deprivation of Constitutional Rights*

■  The first issue is whether Plaintiff has been deprived of a right secured by the Constitution or laws of the United States. Plaintiff alleges that Defendant O'Mara filed the charges against Plaintiff without first having probable cause to believe that Plaintiff had committed a crime and therefore violated Plaintiff's rights under the Fourth and Fourteenth Amendments.

The filing of charges without probable cause is actionable under section 1983. Probable cause exists when the facts and circumstances are sufficient to warrant a prudent man in believing that the defendant had committed or was committing an offense. The Third Circuit has held that the question of probable cause in a section 1983 action is one for the jury. *Patzig v. O'Neil,* 577 F.2d 841, 848 (3d Cir.1978). Therefore, the question before the Court on Defendant's motion for summary judgment is whether a reasonable jury, on the evidence presented to the Court by the parties, and drawing all inferences in Plaintiff's favor, could reasonably

find that Defendant O'Mara did not have probable cause to believe that Plaintiff had committed burglary and felony murder.

The Court finds that there exists a sufficient genuine issue of material fact as to whether Defendant O'Mara had probable cause to file a criminal complaint against Plaintiff. Prior to filing the criminal complaint there were only two pieces of evidence: one, the uncorroborated statement of Bobby Lee Brown, who had been found untruthful earlier that day, when Brown stated that he and Robert Lohman went to the Bell/Skov residence and that Lohman shot the victims, and two, fifteen .22 caliber long rifle rounds found in a nightstand used by Bobby Brown in the Krouch residence. While it is true that Bobby Brown's detailed description of the events of October 10, 1990 provides a good deal of evidence that would support a finding of probable cause against Lohman, his lack of detail about what Lohman was wearing that day and his previous untruthfulness provides an example of evidence that would support a contrary finding. Whether Defendant O'Mara acted as a reasonable human being in believing that Robert Lohman had committed burglary and felony murder may well depend upon his credibility which can be resolved only by a jury.

### B. *Municipal Liability*

The second issue on Plaintiff's section 1983 claim is whether the alleged deprivation of Plaintiff's constitutional rights was caused by official policy or custom according to *Monell* and its progeny. When the plaintiff seeks to hold a municipality liable for the constitutional torts of its employees, the plaintiff must prove that "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or a "custom." *Monell v. Dep't of Social Services,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). Under *Monell,* municipal liability attaches when the constitutional injury results from the implementation or execution of the policy or custom by its lawmakers "or by those whose edicts or acts may fairly be said to represent official policy...." *Id.* at 694, 98 S.Ct. at 2038. The

Supreme Court has held that "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembaur v. City of Cincinatti,* 475 U.S. 469, 480, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986). In *Pembaur,* the Court held that a county could be held liable for a single decision by the county prosecutor that authorized an unconstitutional entry into the plaintiff's clinic. The plurality of the Court concluded that "[m]unicipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur,* 475 U.S. at 483, 106 S.Ct. at 1300. State law determines whether an official possesses policymaking authority with respect to particular matters. *Id.; see also City of St. Louis v. Praprotnik,* 485 U.S. 112, 124, 108 S.Ct. 915, 924, 99 L.Ed.2d 107 (1988). Furthermore, the question of who is a policymaking official is one of law for the court, not one of fact for a jury. *Praprotnik,* 485 U.S. at 124, 108 S.Ct. at 924. Finally, for a subordinate's decision to be attributable to the municipal entity, "the authorized policymakers [must] approve [the] decision and the basis for it." *Id.* at 127, 108 S.Ct. at 926. In that case, the ratification would be chargeable to the municipality. "Simply going along with discretionary decisions made by one's subordinates, however, is not a delegation to them of authority to make policy." *Id.* at 130, 108 S.Ct. at 927.

In *Pembaur,* Ohio law authorized the county sheriff to obtain instructions from the county prosecutor in matters connected with his duties. Pursuant to "standard office procedure," the sheriff's office referred the matter at issue to the county prosecutor and then followed his instructions to forcibly enter Pembaur's clinic. In ordering the deputy sheriffs to enter the clinic, the court held that the county prosecutor was acting as the final decisionmaker for the county, and that therefore the county could be held liable under section 1983. *Pembaur,* 475 U.S. at 484–85, 106 S.Ct. at 1300–01.

In this case there is no evidence that there was a policy, practice, or standard operating procedure of Defendant Township, its police department, or the chief of police to

file criminal complaints against persons without probable cause. Moreover, even assuming that the chief of police instructed Patrolman O'Mara to file the criminal complaint against Plaintiff or that he approved the decision and the basis for it, the chief of police of the Oxford Township Police Department is not an official policymaker of Oxford Township. The governing body of Oxford Township appoints the chief of police and prescribes his powers, functions, and duties. The chief of police is directly responsible to that governing body, and the chief administers and enforces rules and regulations, exercises the powers and duties of the force, prescribes the duties of his subordinates, and delegates his authority "pursuant to policies established by" the Township's governing body. N.J.Stat.Ann. § 40A:14–118. Because there is no genuine issue of material fact relevant to whether the alleged deprivation of Plaintiff's constitutional rights was caused by official policy or custom according to *Monell, Pembaur,* and *Praprotnik,* Defendants Township of Oxford and Oxford Township Police Department are entitled to judgment as a matter of law.

### IV. Defamation [1]

Plaintiff alleges that Defendant O'Mara, "by filing of criminal charges in the criminal complaint ... and continuing thereafter at least until the time of Plaintiff's release, effectively stated to others that Plaintiff had committed illegal acts constituting criminal conduct when in fact Plaintiff had not engaged in any such conduct." Amended Complaint ¶ 27. Plaintiff alleges that Defendant O'Mara acted with the willful and malicious intent to injure Plaintiff and thereby negligently, recklessly, willfully, intentionally, falsely, and maliciously published the statements constituting a defamatory communication concerning Plaintiff. Amended Complaint ¶ 28.

■ A federal court sitting in diversity applies the law of the state in which the federal court sits. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82

L.Ed. 1188 (1938). The facts and circumstances in this case, however, raise a possible problem of conflict of laws. The murders occurred in New Jersey, Patrolman O'Mara filed the criminal complaint against Plaintiff in New Jersey, and a New Jersey municipal court issued an arrest warrant. Defendant O'Mara is a citizen of New Jersey. On the other hand, the fugitive warrant was directed to the Mount Bethel, Pennsylvania police with the intent that they arrest Plaintiff. Plaintiff was arrested in Pennsylvania and kept in custody in Pennsylvania for over one month. Plaintiff is a citizen of Pennsylvania. Therefore, there may be an issue of whether the Court should apply Pennsylvania or New Jersey law to Plaintiff's defamation claim.

Of course, there is no conflict of laws problem if the law of Pennsylvania and New Jersey regarding defamation are not in conflict. The elements of the tort of defamation under New Jersey and Pennsylvania law are similar.

■ Defendant O'Mara raises the issue of immunity. He contends that the sole basis for Plaintiff's defamation claim is Defendant O'Mara's filing of criminal charges in the criminal complaint. Defendant O'Mara asserts that under both Pennsylvania and New Jersey law he is absolutely immune for alleged defamatory statements contained in the criminal complaint.

Under Pennsylvania law, judges, attorneys, witnesses, and parties are absolutely immune from liability for defamation for statements made in the course of, or pertinent to, any stage of judicial proceedings. *Pawloski v. Smorto,* 403 Pa.Super. 71, 588 A.2d 36 (1991); *Barto v. Felix,* 250 Pa.Super. 262, 378 A.2d 927 (1977). The immunity extends to defamatory statements made in pleadings. *Pawlowski,* 588 A.2d at 41. The determination as to whether a particular statement is absolutely privileged is a question of law for the court. *Id.* Where an individual swears out a criminal complaint against another, the allegations in that complaint are absolutely privileged. *Badami v.*

---

1. The Court has original jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1332(a) because Plaintiff is a citizen of Pennsylvania and Defendant O'Mara is a citizen of New Jersey and the amount in controversy exceeds $50,000.

*Dimson,* 95 Montgomery County 89 (Pa.C.P. 1972), *aff'd,* 226 Pa.Super. 75, 310 A.2d 298 (1973).

Likewise, New Jersey law accords an absolute privilege to pleadings, criminal complaints, court reports, and statements made in the course of judicial proceedings. *Fleming v. United Parcel Service,* 255 N.J.Super. 108, 604 A.2d 657 (App.Div.1992). Allegations made in a criminal complaint filed in municipal court are absolutely privileged and afford no basis for an action for defamation. *Genito v. Rabinowitz,* 93 N.J.Super. 225, 229, 225 A.2d 590, 592 (App.Div.1986).

Under both Pennsylvania and New Jersey law, therefore, the allegations made by Defendant O'Mara in the criminal complaint filed in Oxford Township (New Jersey) Municipal Court are absolutely privileged and Plaintiff may not maintain a claim for defamation against Defendant O'Mara based upon the criminal complaint. There is no genuine issue of material fact for trial and therefore the Court will grant summary judgment for Defendant O'Mara on Plaintiff's defamation claim.

### V. Malicious Prosecution

■ Under both Pennsylvania and New Jersey law, to prevail on a claim of malicious prosecution the plaintiff must prove that the defendant initiated criminal proceedings against the plaintiff, that the defendant acted with malice, that the defendant lacked probable cause to believe that the plaintiff committed a crime, and that the proceedings terminated in favor of the plaintiff. *Kelley v. General Teamsters, Chauffeurs, and Helpers, Local Union 249,* 518 Pa. 517, 544 A.2d 940 (1988); *Fleming v. United Parcel Service,* 255 N.J.Super. 108, 604 A.2d 657 (App. Div.1992). The jury is entitled to infer malice from the fact that one acts without probable cause. *Kelley v. General Teamsters, Chauffeurs, and Helpers, Local Union 249,* 518 Pa. 517, 544 A.2d 940 (1988); *Earl v. Winne,* 14 N.J. 119, 101 A.2d 535, 101 A.2d 535 (1953). Plaintiff can prove that the proceedings terminated in his favor by the administrative dismissal or voluntary withdrawal of the charges. *See Rubin v. Nowak,* 248 N.J.Super. 80, 590 A.2d 249 (1991).

■ While the elements of the tort of malicious prosecution are the same under New Jersey and Pennsylvania law, Defendant O'Mara contends that the New Jersey Tort Claims Act applies in this case. The Act provides in pertinent part that "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment." N.J.Stat.Ann. § 59:3–8. Pennsylvania law does not contain such a provision.

■ To resolve a conflict of laws problem, this Court must apply the choice of law rules of Pennsylvania, the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Pennsylvania follows a flexible choice of law approach for tort actions that employs a combination of Professor Currie's interest analysis and the *Restatement (Second) of Conflict of Laws* grouping of contacts theory. *Griffith v. United Air Lines,* 416 Pa. 1, 203 A.2d 796 (1964); *Melville v. Home Assur. Co.,* 584 F.2d 1306 (3d Cir.1978). Under the *Restatement,* "the rights and liabilities of the parties for malicious prosecution ... are determined by the local law of the state where the proceeding complained of occurred, unless, with respect to the particular issue, some other state has a more significant relationship ... to the occurrence and the parties, in which event the local law of the other state will be applied." *Restatement (Second) Conflict of Laws* § 155 (1971). In this case the murders occurred in New Jersey and the institution of the criminal proceeding—the filing of the criminal complaint—also occurred in New Jersey. In this situation, the law of New Jersey should be applied. *See id.* comment b. Even though Plaintiff was arrested and detained in Pennsylvania, it cannot be said that Pennsylvania has a more significant relationship to the occurrence and the parties with respect to the issue of whether Defendant O'Mara should be entitled to immunity under the New Jersey Tort Claims Act. New Jersey has a significant interest in preventing its police officers from being held liable for instituting criminal complaints within the scope of their employment.

■ Defendant O'Mara contends that he is entitled to summary judgment on Plaintiff's malicious prosecution claim on the basis of N.J.Stat.Ann. § 59:3–8. The immunity recognized by that statute, however, does not extend to conduct amounting to a crime or to conduct that constitutes actual malice, actual fraud, or willful misconduct. *Id.* § 59:3–14. If Defendant O'Mara acted without probable cause in filing the criminal complaint against Plaintiff a jury could infer actual malice, and Defendant would lose the protection provided by section 59:3–8. As discussed in section III above, the Court finds that there exists a genuine issue of material fact as to whether Defendant O'Mara had probable cause to file a criminal complaint against Plaintiff. Therefore, the Court will deny summary judgment to Defendant O'Mara on Plaintiff's malicious prosecution claim.

## VI. Intentional Infliction of Emotional Distress

Pennsylvania and New Jersey generally follow the *Restatement* definition of the tort of intentional infliction of emotional distress: "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress and, if bodily harm to the other results from it, for such bodily harm." *Restatement (Second) of Torts* § 46 (1965). *See, e.g., Kazatsky v. King David Memorial Park,* 515 Pa. 183, 190–191, 527 A.2d 988, 991 (1987); *Buckley v. Trenton Savings Fund Society,* 111 N.J. 355, 366, 544 A.2d 857 (1988). Pennsylvania and New Jersey law differ, however, with regard to the damage element. Under Pennsylvania law, the existence of the alleged emotional distress must be supported by competent medical evidence. *Kazatsky v. King David Memorial Park, Inc.,* 515 Pa. 183, 197, 527 A.2d 988, 995 (1987). New Jersey law does not impose such a requirement.

The Court need not decide the question of whether Pennsylvania or New Jersey law should apply to Plaintiff's claim because Plaintiff cannot succeed on this claim under either New Jersey or Pennsylvania law. Defendant is entitled to summary judgment under Pennsylvania law on Plaintiff's claim for intentional infliction of emotional distress because there is no competent medical evidence in the record of the severity of Plaintiff's alleged emotional distress. Defendant is also entitled to summary judgment on Plaintiff's claim under New Jersey law. The emotional distress suffered must be so severe that "no reasonable man could be expected to endure it." *Buckley v. Trenton Saving Fund Society,* 111 N.J. 355, 366–62, 544 A.2d 857 (1988) (quoting *Restatement (Second) of Torts* § 46, cmt. j (1965)). "It is for the court to determine whether on the evidence severe emotional distress can be found. It is only after an affirmative finding by the court on this issue that the matter may proceed to trial." *Buckley,* 111 N.J. at 367, 544 A.2d 857. Other than the allegations of Plaintiff's complaint, there is no evidence that Plaintiff suffered severe emotional distress. Neither Plaintiff's affidavit nor any of the documents submitted by the parties mention Plaintiff's emotional distress. Plaintiff cannot rely on the allegations of the complaint to withstand Defendant's motion for summary judgment once Defendant has met his burden of showing a lack of a genuine issue of material fact. Therefore, the Court will grant summary judgment for Defendant on Plaintiff's claim for intentional infliction of emotional distress.

## VII. Conclusion

The Court will grant Defendants' motion for summary judgment on Plaintiff's claims under 42 U.S.C. § 1983, and for defamation and intentional infliction of emotional distress because there is no genuine issue of material fact and Defendants are entitled to judgment as a matter of law. The Court will deny Defendant O'Mara's motion for summary judgment on Plaintiff's claim for malicious prosecution. The Court will proceed to trial and will apply New Jersey law. An appropriate order follows.

## ORDER

Upon consideration of Defendants' motion for summary judgment, Plaintiff's response, and for the reasons stated in the foregoing memorandum:

1. Defendants' motion is GRANTED IN PART AND DENIED IN PART.

2. Defendants' Township of Oxford and Oxford Township Police Department motion for summary judgment on Plaintiff's first cause of action under 42 U.S.C. § 1983 is GRANTED. Judgment is ENTERED for Defendants Township of Oxford and Oxford Township Police Department against Plaintiff on Plaintiff's first cause of action.

3. Defendant O'Mara's motion for summary judgment on Plaintiff's second cause of action for defamation is GRANTED. Judgment is ENTERED for Defendant O'Mara against Plaintiff on Plaintiff's second cause of action.

4. Defendant O'Mara's motion for summary judgment on Plaintiff's third cause of action for malicious prosecution is DENIED.

5. Defendant O'Mara's motion for summary judgment on Plaintiff's fourth cause of action for intentional infliction of emotional distress is GRANTED. Judgment is ENTERED for Defendant O'Mara against Plaintiff on Plaintiff's fourth cause of action.

IT IS SO ORDERED.