Rashim DEVATT, Plaintiff,

v.

Matthew J. LOHENITZ, Detective, Individually and as Police Officer and Official for the Easton Police Department, and City of Easton, Defendants.

No. CIV.A.03–CV–5558.

United States District Court,
E.D. Pennsylvania.

Oct. 1, 2004.

Gregory L. Schell, Esquire, Philadelphia, PA, for plaintiff.

David P. Karamessinis, Esquire, Conshohocken, PA, for defendants.

## OPINION

GARDNER, District Judge.

This matter is before the court on Defendant, Detective Matthew J. Lohenitz and City of Easton's Motion for Summary Judgment filed July 30, 2004.[1]  Because we conclude that the constitutional rights of plaintiff Rashim DeVatt were not violated, that a reasonable officer under the circumstances presented here would not have believed that he was violating plaintiff's rights, and that defendants were privileged to arrest and prosecute plaintiff, we conclude that defendant Lohenitz is entitled to qualified immunity and official immunity and that both defendants are entitled to summary judgment against plaintiff.

## PROCEDURAL HISTORY

The within civil action was initiated on October 3, 2003 when defendants filed a notice of removal from the Court of Common Pleas of Northampton County, Pennsylvania.  *See* 28 U.S.C. §§ 1441, 1446. Plaintiff brings his federal claims pursuant to 42 U.S.C. § 1983.  Specifically, plaintiff

---

**1.**  On August 2, 2004, defendants filed exhibits in support of their motion for summary judgment.  On August 26, 2004, Plaintiff, Rashim DeVatt's Statement of Undisputed Facts in Opposition to Defendants' Motion for Summary Judgment and Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment were filed.

contends that his rights under the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution have been violated by defendants. Additionally, plaintiff asserts state law claims for assault, battery, false arrest, false imprisonment, abuse of process, malicious prosecution, civil conspiracy, intentional infliction of emotional distress, invasion of privacy, negligence, and violations of the Pennsylvania Constitution.

The matter is before the court on federal question jurisdiction. *See* 28 U.S.C. § 1331. The court has supplemental jurisdiction over plaintiff's pendent state law claims. *See* 28 U.S.C. § 1367. Venue is appropriate because the facts and circumstances giving rise to plaintiff's cause of action occurred in Northampton County, Pennsylvania, and defendants may be found in Northampton County. *See* 28 U.S.C. §§ 118, 1391. Plaintiff has not demanded a trial by jury.

### FACTS

Based upon the pleadings, exhibits, stipulated facts [2] and record papers the following are the pertinent facts. On March 23, 2001, a SWAT team from the Easton Police Department raided a home at 422 Centre Street, Easton, Pennsylvania. Their search of the home was authorized by a search warrant signed on March 22, 2001 by District Justice Sandra Zemgulis.

The search warrant indicated that a confidential informant had made two purchases of drugs in the household after having spoken on the telephone with David DeVatt, plaintiff's brother. The search warrant also indicated that Rashim DeVatt was one of the individuals who lived at the residence.

Pursuant to the search warrant, the SWAT team went to the residence in the early morning hours of March 23, 2001. A member of the SWAT team knocked and announced their presence. Upon receiving no response, members of the SWAT team broke open the door and entered the residence. When the SWAT team entered the house plaintiff was found on the first floor in the middle dining room.

During the raid certain individuals fled to the second floor. While in pursuit of the fleeing individuals, police encountered a growling pit bull. The officers discovered that there were several pit bulls at the residence. The officers requested that the residents control the pit bulls, but they did not comply with this request. Because the dogs were not restrained one of the pit bulls was shot and killed.

During the search, officers discovered evidence of illegal activity in many rooms in the residence. In a middle bedroom on the second floor containing two twin beds, police found narcotics, including crack cocaine, drug paraphernalia, including a drug scale, and weapons, including guns and a cross-bow. Police found documents in the middle bedroom that indicated that it was occupied by at least Donald DeVatt.

In the only bathroom in the house, police found drug paraphernalia, including baking power, which is used to cut [3] crack cocaine.

---

2. As part of their motion for summary judgment defendants submitted Detective Matthew J. Lohenitz and City of Easton's Statement of Undisputed Facts in Support of Defendants' Motion for Summary Judgment. This document contains 36 paragraphs of "undisputed facts". In response, plaintiff agrees to paragraphs 1–35, but disagrees with paragraph 36, which reads, "Defendants denied all allegations in the Complaint." It appears that defendants admitted some of the procedural and factual allegations in plaintiff's Complaint, but denied any wrongdoing; nevertheless, the truth of paragraph 36 is not relevant to the issue of summary judgment.

3. Cutting cocaine means to mix it with another substance, in this case baking powder, to

In the computer room on the second floor, police found crack cocaine and drug paraphernalia.

In another bedroom, which the police believe was occupied by Jamie Thomas and Albuquan Willis, the police found swords, art work portraying gangs, a .40 caliber pistol, a 303 British Infield Rifle, other weapons, ammunition for a 9 millimeter pistol, a receipt for a drug scale and items described by Detective Lohenitz as counter-surveillance. At the time of the search, Jamie Thomas told Detective Lohenitz that the bedroom was actually plaintiff Rashim DeVatt's bedroom, but that plaintiff had given the bedroom to them because Jamie Thomas and Albuquan Willis had an infant.

No drugs or drug paraphernalia were found on the person of plaintiff during the course of the search.

During the execution of the search warrant, police arrested Andre Tucker (also known as Albuquan Willis), plaintiff Rashim DeVatt, and Ramon Clark. The police later arrested Donald DeVatt and Eleanor DeVatt, who were not present, but who resided in the house.

Subsequently, a criminal Complaint and an Affidavit of Probable Cause in support of a warrant for the arrest of Rashim DeVatt was presented to District Justice Zemgulis. The Affidavit of Probable Cause set forth that plaintiff resided at 422 Centre Street, that a search warrant had been executed at that address, and that during the execution of the search warrant police discovered crack cocaine in the common areas of the residence, drug paraphernalia and handguns with obliterated serial numbers. District Justice Zemgulis signed a warrant that authorized arresting plaintiff for possession of drug paraphernalia, altering or obliterating marks or identification of firearms and criminal conspiracy.

Plaintiff was then arrested and committed to the Northampton County Prison. The commitment Order was also signed by District Justice Zemgulis.

On May 30, 2001, District Justice Zemgulis presided over a preliminary hearing on the charges against Rashim DeVatt and Eleanor DeVatt. Detective Lohenitz was the sole Commonwealth witness. District Justice Zemgulis bound all charges over for trial. However, the Commonwealth withdrew the charge of obliterating marks of identification on weapons.

During his deposition, plaintiff testified that at the time of the raid he slept "sometimes [in] the computer room, my brother's room or downstairs." Plaintiff believes that he kept his clothes in the computer room. He further testified that all residents of the home had access to the computer room. He also testified that he did not know that drugs were being produced in the house and denied seeing any drug paraphernalia.

At the time of the raid, plaintiff claims that he had been sleeping upstairs. During the raid, he was handcuffed, but he does not know by whom. However, plaintiff was not touched by any other officer during the remainder of the time that he was in the house. Detective Lohenitz never touched plaintiff.

During the time plaintiff was incarcerated at the Northampton County Department of Corrections he neither contacted anyone from the District Attorney's office about the charges against him, nor Detective Lohenitz. Plaintiff does not believe

dilute its strength and purity and to increase the volume of the mixture as compared to the volume of the original cocaine.

that his public defender contacted the police to tell them that the guns and drugs found in the house did not belong to plaintiff.

Approximately four months after the charges were filed, after his charges were bound over for trial and while plaintiff was incarcerated at the Northampton County Prison, Albuquan Willis gave a sworn statement before an Assistant District Attorney, his own attorney and Detective Lohenitz, in which he indicated that Ramon Clark and Donald DeVatt were the ones involved in the producing and selling of crack cocaine at the residence.

On January 11, 2002, Donald DeVatt pled guilty to charges of delivery of a controlled substance, possession of a firearm with obliterated marks and possession with intent to deliver cocaine. Upon questioning during the guilty plea hearing, Donald DeVatt agreed that he and Ramon Clark were involved with the distribution of drugs and that Rashim DeVatt was not involved.

That same day, January 11, 2002, the charges against Rashim DeVatt were withdrawn based upon "discovery of exculpatory evidence—other defendants have accepted responsibility and have pled guilty."

### STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper when no genuine issue of material fact is in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Federal Home Loan Mortgage Corp. v. Scottsdale Insurance Company*, 316 F.3d 431, 443 (3d Cir.2003). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211 (1986); *see Federal Home Loan*, 316 F.3d at 443. Thus, a "material" fact is one that is necessary to establish an element under the substantive law governing a claim. A fact is "genuine" if it is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510, 91 L.Ed.2d at 211.

When considering summary judgment, the court must take the facts in the light most favorable to the non-moving party. While the non-moving party is not burdened to prove his case as he might at trial, "a party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510, 91 L.Ed.2d at 212 (*quoting* Fed.R.Civ.P. 56(e)). As a result, plaintiff, as the moving party, must set forth such facts as would permit a reasonable jury to conclude that the plaintiff can establish every element of his case.

### DISCUSSION

#### Standard for Qualified Immunity

■ The standard for qualified immunity is uniform regardless of "the precise nature of various officials' duties or the precise character of the particular rights alleged to have been violated." *Anderson v. Creighton*, 483 U.S. 635, 643, 107 S.Ct. 3034, 3040–3041, 97 L.Ed.2d 523, 533–534 (1987).

■ Qualified immunity is an affirmative defense that must be pled by a defendant who is a government official. *Gomez v. Toledo*, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). While qualified immunity is an affirmative defense, it does

not simply protect a defendant official from liability, but rather from having to defend suit. *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Put another way, qualified immunity is "an entitlement [for government officials] not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411, 425 (1985).

The doctrine was established because the court found the tribulations of litigation an unreasonable burden on officials exercising subjective good faith in their discretionary duties. The United States Supreme Court determined that any potential good that could come of suits against government officials for discretionary acts was outweighed by the chilling effect that such litigation would have on legitimate governmental activities. *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978).

■ If qualified immunity is to be defeated, plaintiff must satisfy a two-prong test. Initially, he must establish that the government official violated a "basic, unquestioned constitutional right" belonging to plaintiff. *Harlow*, 457 U.S. at 815, 102 S.Ct. at 2736–2737, 73 L.Ed.2d at 408 (*citing Wood v. Strickland*, 420 U.S. 308, 322, 95 S.Ct. 992, 1001, 43 L.Ed.2d 214, 225 (1975)).

Next, plaintiff must establish that the official "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury." *Harlow*, 457 U.S. at 815, 102 S.Ct. at 2737, 73 L.Ed.2d at 409 (*citing Wood*, 420 U.S. at 322, 95 S.Ct. at 1001, 43 L.Ed.2d at 225).

■ To satisfy the first prong of the test, it is not enough to point to a provision of a Constitutional amendment such as the due process clause. Analysis at this level of generality eviscerates the protection that the doctrine is meant to provide. *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038–3039, 97 L.Ed.2d 523, 530–531 (1987). Rather, plaintiff must establish that "in the light of pre-existing law the unlawfulness [of the official action was] apparent." *Id.*, 483 U.S. at 640, 107 S.Ct. at 3039, 97 L.Ed.2d at 531. Thus, plaintiff must show how the limits of a Constitutional protection have been so clearly defined as to preclude the official's act from being questionably Constitutional.

■ To satisfy the second prong, plaintiff must show that the defendant official had notice that his alleged conduct was outside established Constitutional barriers. Plaintiff may establish this prong by showing that the state of the law is so clear that any reasonable official knew, or should have known, that his conduct would be illegal.

■ In so doing, however, the qualified "immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police action." *Saucier v. Katz*, 533 U.S. 194, 205, 121 S.Ct. 2151, 2158, 150 L.Ed.2d 272, 284 (2001); *see Anderson*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523. Merely establishing a Constitutional violation will not defeat immunity. This standard is meant to protect all but the most egregious of offenses or the most incompetent of officials.

■ When considering a qualified immunity defense, we must determine the validity of the defense as a matter of law. It is improper to allow a jury to consider such a defense. *Hunter v. Bryant*, 502 U.S. 224, 112 S.Ct. 534, 116 L.Ed.2d 589

(1991). However, we are required to take the facts in the light most favorable to the plaintiff. *Saucier v. Katz,* 533 U.S. at 201, 121 S.Ct. at 2156, 150 L.Ed.2d at 281. If the facts viewed in this light do not overcome either prong of the qualified immunity defense, then judgment must be granted for defendant.

### Application of Qualified Immunity to Detective Lohenitz

Plaintiff's allegations against defendants may be divided into two categories: those arising from his arrest and those arising from his subsequent prosecution.[4] We will initially address these accusations as they pertain to Detective Lohenitz.

In this action, plaintiff fails to set forth any disputed facts to overcome the first prong of the qualified immunity analysis regarding either the arrest or subsequent prosecution. Plaintiff has not established that Detective Lohenitz violated any "basic, unquestioned constitutional right" belonging to the plaintiff. *Harlow,* 457 U.S. at 815, 102 S.Ct. at 2736–2737, 73 L.Ed.2d at 408.

We begin with plaintiff's allegations concerning the arrest.

At the outset it is important to note that plaintiff does not challenge the validity of the search warrant authorizing the search of the residence.[5] Rather, plaintiff's argument is that evidence found at the residence during the execution of the search warrant and the relationship between the evidence and plaintiff did not constitute probable cause sufficient to justify plaintiff's arrest. In essence, plaintiff argues that no objective officer would reasonably believe that plaintiff was engaged in criminal activity. For the following reasons we disagree.

A police officer may effectuate an arrest for a felony charge if there is reasonable cause to suspect that the detained person committed the offense. U.S. Const. amend. IV; *Watson,* 423 U.S. at 417, 96 S.Ct. at 824, 46 L.Ed.2d at 605. In order for reasonable cause to exist for an arrest, the arrest must be based upon probable cause. *Ker v. California,* 374 U.S. 23, 34–35, 83 S.Ct. 1623, 1630, 10 L.Ed.2d 726, 739 (1963).

Whether probable cause exists is to be determined by examining the totality of the circumstances. *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—... [these] are the factual and practical considerations of everyday life of which reasonable and prudent men, not

---

**4.** We note that plaintiff has identified no right under either the First or Fifth Amendments to the United States Constitution that was allegedly violated by Detective Lohenitz. Moreover, there is no averment in the Complaint or any record fact that identifies a basis for such a violation. Accordingly, we conclude that Detective Lohenitz did not violate any right of plaintiff under either the First or Fifth Amendments and need not address whether Detective Lohenitz is entitled to qualified immunity on these allegations.

**5.** The warrant and the affidavit supporting the warrant are entitled to a presumption of validity. *See Franks v. Delaware,* 438 U.S. 154, 171, 98 S.Ct. 2674, 2684, 57 L.Ed.2d 667, 682 (1978). Accordingly, in the absence of any evidence to the contrary, we conclude that the search warrant signed on March 22, 2001 by District Justice Sandra Zemgulis is valid.

This is particularly significant because the standard for an arrest in a residence and in public differ. *Compare Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), *with United States v. Watson,* 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976). Because plaintiff does not contest the legitimate entry of the police into the residence, we employ the more deferential standard for making an arrest in public.

legal technicians, act." *Gates,* 462 U.S. at 231–232, 103 S.Ct. at 2329, 76 L.Ed.2d at 544 (1983). Accordingly, we must "determine whether the facts available to the officers at the moment of the arrest 'warrant a man of reasonable caution in the belief' that an offense has been committed." 379 U.S. 89, 96, 85 S.Ct. 223, 228, 13 L.Ed.2d 142, 148 (1964)(*quoting Carroll v. United States,* 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543, 555 (1925)).

On March 23, 2001, officers from the Easton Police Department SWAT team entered the home located at 422 Centre Street, Easton, Pennsylvania, pursuant to a valid search warrant. The affidavit in support of the search warrant indicated that a confidential informant had made two purchases of drugs in the household after having spoken on the telephone with David DeVatt, plaintiff's brother, and plaintiff Rashim DeVatt, another individual who lived at the residence.

■■■ When the police entered the residence they encountered a chaotic scene. Some residents fled to the second floor and the officers encountered pit bulls, one of which was unrestrained and which the officers had to shoot. Moreover, the officers found weapons in at least two rooms.[6]

Thereafter, during the search of the residence, the police discovered drugs, drug paraphernalia and cutting agents for drugs. Moreover, while these items were found in many different rooms in the residence, each of these items were also discovered in common areas in the house such as the bathroom and the computer room.

Plaintiff's access to the areas in the house is a matter of some confusion. At the time of the search, Jamie Thomas advised Detective Lohenitz that the room in which she and Mr. Willis were living was actually plaintiff's bedroom, but that plaintiff had permitted them to use it. At his deposition, plaintiff testified that, at the time of the raid, he slept "sometimes [in] the computer room, my brother's room or downstairs." At the time of the search, plaintiff was found in the first floor dining room. Accordingly, while where plaintiff slept might have changed, it is evident that he had access to the entirety of the residence, including all of the rooms in which the illegal substances were found.

■■■ An objective officer, under the totality of these circumstances, could have concluded that plaintiff had constructive possession of the drugs, drug paraphernalia and weapons. Constructive possession exists if, upon review of the totality of the circumstances, an individual has "conscious dominion" over the illegal property. *Commonwealth v. Carroll,* 510 Pa. 299, 302, 507 A.2d 819, 820–821 (1986).

■■■ Conscious dominion may be found in one person where many people "have equal access to an area where the illegal substance or contraband is found." *Commonwealth v. Macolino,* 503 Pa. 201, 208, 469 A.2d 132, 135 (1983). This proposition is derivative of the conclusion that "[p]ossession of an illegal substance need not be exclusive; two or more [persons] can possess the same drug at the same

---

**6.** We note that "[a] much higher fault standard is proper when a government official is acting instantaneously and making pressured decisions without the ability to fully consider the risks." *Miller v. City of Philadelphia,* 174 F.3d 368, 375 (3d Cir.1999). In order for such a government official to be found culpable under such circumstances, he must "reach a level of gross negligence or arbitrariness that indeed 'shocks the conscience.'" *Id.; Sacramento v. Lewis,* 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). However, because we conclude that the arrest was warranted by the evidence garnered by the lawful search regardless of the chaos that ensued after the entry into the residence, we need not employ this heightened protection for Detective Lohenitz's actions.

time." *Id.*, 503 Pa. at 209, 469 A.2d at 136; *Commonwealth v. Aviles*, 419 Pa.Super. 345, 615 A.2d 398 (1992). Hence, an officer may use the circumstantial evidence of equal access to the illegal substance to infer possession or joint possession to that illegal substance. *Commonwealth v. Haskins*, 450 Pa.Super. 540, 677 A.2d 328 (1996).

It is undisputed that plaintiff had access to his brother's bedroom, the computer room, the bathroom and the downstairs living area. Furthermore, the contraband, including drugs, drug paraphernalia and guns were found in the area wherein plaintiff had access. Moreover, while plaintiff contends that he did not see the contraband, the evidence is that the contraband was located throughout the house, as opposed to localized in one room. Accordingly, we conclude that a reasonable officer could have found probable cause existed that plaintiff was in constructive possession of all the contraband for which he was charged.

An objective officer could have further concluded that plaintiff intended to sell or deliver the contraband. In determining whether a person had the requisite intent to sell or deliver an illegal substance we employ an analysis similar to that for constructive possession. In conducting the analysis, we examine the totality of the circumstances and consider the fair inferences from the circumstantial evidence as found by the officer. *Aviles*, 419 Pa.Super. at 354, 615 A.2d at 402–403. For example, the presence of cutting agents, drug paraphernalia, such as scales, and controlled purchases of a controlled substance from a residence permit an inference that a person intended to sell or deliver an illegal substance.

Such is the case here. The police found all of the contraband within the area to which plaintiff had access. The contraband included drug scales. Moreover, the police had conducted controlled buys from the residence. Accordingly, we conclude that a reasonable officer under the circumstances could have found probable cause that plaintiff, not only constructively possessed the contraband, but intended to sell or deliver the illegal drugs.

Because a reasonable officer could have found probable cause for the arrest of plaintiff on each of the charges, we conclude that Detective Lohenitz is entitled to qualified immunity for any asserted violation of plaintiff's rights under the Fourth Amendment to the United States Constitution as applicable to Detective Lohenitz under the Fourteenth Amendment to the United States Constitution.[7]

---

7. Plaintiff also contends that his Fourth Amendment rights were violated because the police officers placed him, handcuffed, face-down in the entry way to the kitchen and that the officers walked over him, without touching him, as they entered and exited the kitchen. Plaintiff cites no authority to indicate that it is a violation of the Fourth Amendment to the United States Constitution to walk over someone who is in custody and our own research reveals no such authority. However, we note that "executive action challenges raise a particular need to preserve the constitutional proportions of constitutional claims, lest the Constitution be demoted to what we have called a font of tort law." *Lewis*, 523

U.S. at 847, 118 S.Ct. at 1717, 140 L.Ed.2d at 1058. The facts presented here raise no claim of constitutional dimension. Accordingly, we find that Detective Lohenitz is entitled to qualified immunity at step one of the analysis. However, even if we are mistaken in our belief that the Constitution was not violated when the officers stepped over, without touching, plaintiff, we find that no reasonable officer would have realized that his actions were outside clearly established Constitutional barriers. Accordingly, we also find that Detective Lohenitz is entitled to qualified immunity at step two of the analysis.

Turning to the applicability of the qualified immunity doctrine to Detective Lohentz in regard to plaintiff's claims arising from his prosecution, we note that plaintiff has not asserted any basis for liability to be imposed upon Detective Lohenitz (or indeed the City) as a result of these claims. We are not inclined to sua sponte argue these points for plaintiff. Nevertheless, we may make a determination from the facts of record.

As we have concluded above, a reasonable officer could have found probable cause for the arrest of plaintiff on each of the charges. This conclusion is supported by a finding that a reasonable officer could have determined that plaintiff was in constructive possession of the contraband located in the residence and that plaintiff had the requisite intent to distribute the illegal drugs.

These issues were submitted to a neutral and detached magistrate, District Justice Zemgulis, who considered the evidence against plaintiff both when determining whether an arrest warrant was appropriate and at plaintiff's preliminary hearing. District Justice Zemgulis bound all charges over for trial. However, the Commonwealth, in the exercise of its prosecutorial discretion, withdrew the charge of obliterating marks of identification on weapons at plaintiff's preliminary hearing.

■ Ostensibly, the basis for plaintiff's grievance is that approximately four months after the charges were filed, after the charged had been bound over for trial and while plaintiff was incarcerated at the Northampton County Prison, Albuquan Willis gave a sworn statement before the Assistant District Attorney, his own attorney and Detective Lohenitz, in which he indicated that Ramon Clark and Donald DeVatt were the ones involved in the producing and selling of crack cocaine at the residence. It appears that plaintiff believes that when another took criminal responsibility for the contraband, his own criminal culpability was obliviated.

Plaintiff is mistaken in this belief. As we have concluded, there was probable cause that every person who resided in the house and had access to the contraband was guilty of the charges for which plaintiff was charged. If, in the exercise of their discretion, once others accepted criminal liability for the charges, the prosecutor decides not to try cases against co-defendants who may be less culpable, then the prosecutor might well be lauded for his efficient use of judicial resources and mercy towards the plaintiff.

This conclusion is re-enforced by the stipulated fact that, on January 11, 2002, after Donald DeVatt pled guilty to charges of delivery of a controlled substance, possession of a firearm with obliterated marks and possession with intent to deliver cocaine, the charges against plaintiff Rashim DeVatt were withdrawn based upon "discovery of exculpatory evidence-other defendants have accepted responsibility and have pled guilty." We find no basis for the allegations that Detective Lohenitz abused any process, engaged in a malicious prosecution or held plaintiff in jail for one moment longer than was necessary. Accordingly, we conclude that Detective Lohenitz is entitled to qualified immunity for any allegations pertaining to the prosecution of plaintiff.

### Governmental and Official Immunity

We further conclude that Detective Lohenitz is entitled to official immunity from plaintiff's state law claims. State officials are granted official immunity under 42 Pa. C.S.A §§ 8501–8564. Under Pennsylvania law, Detective Lohenitz is subject to substantially the same (if not higher) level of protection under state law as he is under

federal law. *See Marshall v. Port Authority of Allegheny County*, 524 Pa. 1, 568 A.2d 931 (Pa.1990)(explaining the historical roots of Pennsylvania's immunity doctrines and the enactment of those protections by the State legislature).

State law claims raised against a public official in his official capacities are necessarily barred by the Political Subdivision Tort Claims Act, 42 Pa.C.S.A. § 8545, because such an official necessarily acts within the scope of his office or duties, entitling him to official immunities. *Damron v. Smith*, 616 F.Supp. 424, 426 (E.D.Pa.1985). Thus, Detective Lohenitz is entitled to official immunity from plaintiff's state law claims raised against him in his official capacity.

■ We must, nonetheless, consider whether Detective Lohentiz, in his individual capacity, is entitled to official immunity. Where an employee commits "an act [constituting] a crime, actual fraud, actual malice[,] or willful misconduct," that employee is excepted from the otherwise applicable official immunity of 42 Pa.C.S.A. § 8545. 42 Pa.C.S.A. § 8550.

Initially, we address the allegations pertaining to plaintiff's arrest. Because, as explained above, we find that probable cause warranted the arrest of plaintiff, we conclude there is no evidence of record that Detective Lohenitz committed any crime, any fraud, any malice or any willful misconduct, or violated any of plaintiff's rights. Rather, we find that the totality of the circumstances as they exist from the record facts indicates that the arrest of plaintiff and the manner in which plaintiff was arrested was the result of the lawful, reasonable, and privileged conduct of Detective Lohenitz. *See Renk v. City of*

*Pittsburgh,* 537 Pa. 68, 641 A.2d 289 (1994). Accordingly, we extend official immunity to Detective Lohenitz on each of the state law claims pertaining to the arrest of plaintiff.

■ We next turn to plaintiff's allegations pertaining to the prosecution of the charges against him. Because, as explained above, the charges against plaintiff were supported by probable cause, we find that there is no evidence of record that Detective Lohenitz committed any crime, fraud, malice or willful misconduct, or violated any of plaintiff's rights. We further note that under Pennsylvania law the finding of probable cause by a neutral and detached magistrate is conclusive evidence of the existence of probable cause. *See Kelley v. General Teamsters, Local Union 249*, 518 Pa. 517, 544 A.2d 940 (1988).

This is more particularly true here where there are no allegations of fraud or withholding of information from the magistrate. The finding of probable cause is sufficient to defeat each of plaintiff's allegations pertaining to the prosecution of the charges against him. Accordingly, we conclude that Detective Lohenitz is entitled to official immunity for all plaintiff's allegations relating to the prosecution of the charges against him.

■ Finally, we conclude that defendant City of Easton is entitled to governmental immunity from plaintiffs' state law claims and we enter judgment accordingly. We note that none of the state law claims against defendants in the Complaint fall within the narrow range of issues in which the Commonwealth of Pennsylvania has abrogated its sovereign immunity.[8] *See* 42 Pa.C.S.A. §§ 8541–8564. Because plaintiff does not aver that defendant City was

---

8. 42 Pa.C.S.A. § 8542 provides in pertinent part:

    (a) LIABILITY IMPOSED.—A local agency shall be liable for damages on account of an

injury to a person or property within the limits set forth in this subchapter if both of the following conditions are satisfied and

negligent and we have concluded that Detective Lohenitz has not committed any act constituting a crime, actual fraud, actual malice, or willful misconduct, we conclude that the City is entitled to governmental immunity. Accordingly, we dismiss all the state law claims against the City that may be read into plaintiff's Complaint.

### Remaining Claims

Plaintiff's claims against the city for violations of his constitutional rights under the United States Constitution remain. These claims may be brought pursuant to *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In order to sustain a *Monell* action, plaintiff must identify some policy, procedure or practice of the City that authorized or endorsed the actions of its officials. Plaintiff must also show that his injury was proximately caused by the actions of the officials.

Plaintiff sets forth no disputed or stipulated fact that identifies any policy, procedure or practice of the City that proximately caused him any harm. Moreover, our own review of the record reveals no support for any such claim. Rather, the record indicates that plaintiff was lawfully arrested and prosecuted under the laws of the Commonwealth of Pennsylvania. There is no indication from the record that any of plaintiff's rights under either the United States or the Pennsylvania Constitution were violated. Accordingly, we grant summary judgment in favor of defendant City and against plaintiff on those allegations in the Complaint pertaining to

the conduct of the City in regard to plaintiff's arrest and prosecution.

### Conclusion

For all the foregoing reasons, we grant defendants' motion for summary judgment. We grant Detective Lohenitz qualified immunity on all counts arising from allegations of violations of federal law in the Complaint and official immunity for all counts arising from allegations of violations of state law. Moreover, we grant governmental immunity to the City for allegations of violations of state law. Finally, we grant summary judgment in favor of defendant City on plaintiff's *Monell* claims. Accordingly, we enter summary judgment in favor of defendants and against plaintiff on all claims.

---

the injury occurs as a result of one of the acts set forth in subsection (b):

(1) The damages would be recoverable under common law or a statute creating a cause of action if the injury were caused by a person not having available a defense under section 8541 (relating to governmental immunity generally) or section 8546 (relating to defense of official immunity); and

(2) The injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties with respect to one of the categories listed in subsection (b). As used in this paragraph, "negligent acts" shall not include acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct.