**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-2925
_____

SEKEMA GENTLES,
Appellant

v.

BOROUGH OF POTTSTOWN; JEFFREY PORTOCK, The Borough of Pottstown
Police Officer(s), All Sued in Both Personal and Official Capacities; UNRUH, The
Borough of Pottstown Police Officer(s), All Sued in Both Personal and Official
Capacities; UNIDENTIFIED OFFICER, The Borough of Pottstown Police Officer(s), All
Sued in Both Personal and Official Capacities
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:19-cv-00581)
District Judge:  Honorable C. Darnell Jones, II
_____

Argued July 1, 2025
_____

Before:  SHWARTZ, FREEMAN, and SMITH, <u>Circuit Judges</u>.

(Filed on: July 24, 2025)
_____

Rebecca Steinberg [ARGUED]
Brian S. Wolfman
Sara Brizio
Elizabeth Brownstein
Shreya Sarin
Grace Seifert
Georgetown University Law Center
Appellate Courts Immersion Clinic

600 New Jersey Avenue NW, Suite 312
Washington, DC 20001

Counsel for Appellant[*]

Shanna R. Fegely
Hoffman & Hlavac
1605 N. Cedar Crest Boulevard, Suite 509
Allentown, PA 18104

Gregory R. Hennessy
Andrew M. Rongaus [ARGUED]
Siana Law
941 Pottstown Pike, Suite 200
Chester Springs, PA 19425

Counsel for Appellees

———————

OPINION[**]

———————

SHWARTZ, Circuit Judge

Sekema Gentles appeals the District Court's order granting two Pottstown, Pennsylvania police officers summary judgment on his civil rights and tort claims. For the following reasons, we will affirm in part, vacate in part, and remand.

I

---

[*] The Court thanks pro bono counsel for their excellent service in this appeal.

[**] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

A[1]

Gentles purchased a home in Pottstown, Pennsylvania. Before moving into the property, Gentles drove his fiancée and their two children through the alley behind the house to see if there was room to build a garage for his commercial vehicles. Around that time, Pottstown police received an anonymous call reporting a Black man "looking into garage windows in the area." JA 44. As Officer Jeffrey Portock was en route to investigate, the caller reported the man was leaving in a white sedan with a particular license plate number. Portock arrived at the scene, did not see the vehicle, and "cleared" the call. JA 44.

About ten minutes later, Portock observed a Black man, later identified as Gentles, standing next to a white sedan with a license plate number that matched the caller's report. Portock parked and exited his patrol car to speak with Gentles. After Gentles saw Portock approaching, he walked toward his car, entered it, and started the engine. Portock told Gentles he needed to speak with him. When Gentles responded that he was leaving, Portock said he "was not free to leave" and was under criminal investigation. JA 44. Portock asked Gentles to provide his identification, but Gentles refused to do so until Portock explained the reason for the investigation.

---

[1] Because we are reviewing a summary judgment ruling, we recite the facts viewed in the light most favorable to the nonmovant Gentles. Burns v. Pa. Dep't of Corr., 642 F.3d 163, 170 (3d Cir. 2011). We do not consider Gentles's video evidence submitted with his later Fed. R. Civ. P. 60(b) motion because it was not part of the summary judgment record.

Portock informed dispatch that Gentles refused to cooperate and requested backup. Several officers, including Officer Brandon Unruh, arrived at the scene. Gentles exited his car, and Portock and Unruh handcuffed him, searched his pockets, and placed him in a patrol car for about twenty minutes.[2] Once Gentles's fiancée learned about the report describing a man looking in garage windows, she told the police they had recently bought a house and were checking on the property. Gentles was then released, and Portock told him he would receive a citation. Gentles later received a citation for "Disorderly Conduct - Unreasonable Noise" and was found not guilty of the charge. JA 77.

B

Gentles filed a complaint alleging a violation of the Fourth Amendment under 42 U.S.C. § 1983 and a malicious prosecution claim under Pennsylvania law against Portock and Unruh.[3] The District Court granted Portock and Unruh's motion for summary judgment, holding that (1) reasonable suspicion justified the stop because Gentles and his vehicle matched the anonymous tip and because Gentles rushed to his car, started it, and refused to identify himself; and (2) the malicious prosecution claim failed because probable cause existed to issue the citation. Gentles v. Portock, No. CV 19-0581, 2022 WL 4586136, at *5-7 (E.D. Pa. Sept. 29, 2022).

---

[2] The parties agree that Portock assisted in handcuffing and detaining Gentles but disagree whether Unruh was involved.

[3] Gentles raised additional claims against other defendants but does not challenge the District Court's dismissal of those claims.

Gentles appeals.[4]

## II[5]

## A

We first address Gentles's § 1983 claim that his Fourth Amendment rights were violated. The Fourth Amendment prohibits unreasonable seizures, but permits a police officer to conduct a brief, investigatory Terry stop when he has a "reasonable, articulable suspicion that criminal activity is afoot." Illinois v. Wardlow, 528 U.S. 119, 123 (2000) (citing Terry v. Ohio, 392 U.S. 1, 30 (1968)). Although a "reasonable suspicion of criminal activity may be formed by observing exclusively legal activity," Johnson v. Campbell, 332 F.3d 199, 207 (3d Cir. 2003) (citation omitted), an officer must have a "particularized and objective basis for suspecting the particular person stopped of criminal activity," United States v. Brown, 448 F.3d 239, 246 (3d Cir. 2006) (quoting

---

[4] While this appeal was pending, Gentles filed a motion under Federal Rule of Civil Procedure 60(b)(3) and submitted a video depicting a portion of the incident. We remanded the matter for the District Court to address the Rule 60(b) motion. The District Court denied the motion. Gentles did not file a formal notice of appeal of the District Court's Rule 60(b) ruling, but his supplemental brief could be construed as a timely appeal of that ruling. We need not, however, consider the Rule 60(b) determination given our ruling on the District Court's order granting summary judgment. See Trenton Metro. Area Loc. of Am. Postal Workers Union v. U.S. Postal Serv., 636 F.3d 45, 56 n.10 (3d Cir. 2011).

[5] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367, and we have jurisdiction under 28 U.S.C. § 1291. We review the District Court's order granting summary judgment de novo. Burns, 642 F.3d at 170. A grant of summary judgment will be affirmed if our review reveals that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).
.

5

United States v. Cortez, 449 U.S. 411, 417-18 (1981)).

We begin by determining when Portock seized Gentles, "as that is the moment 'the Fourth Amendment becomes relevant.'" Id. at 245 (quoting Terry, 392 U.S. at 16). A seizure occurs when an individual submits to a "show of authority" that "in some way restrain[s] [his] liberty." California v. Hodari D., 499 U.S. 621, 625-26 (1991) (emphasis omitted) (quoting Terry, 392 U.S. at 19 n.16). Portock engaged in a show of authority when he told Gentles he was not free to leave, and Gentles submitted by remaining seated in his unmoving vehicle. See United States v. Lowe, 791 F.3d 424, 434 (3d Cir. 2015). Thus, at that time, Portock initiated the Terry stop and seized Gentles.

We next determine whether the totality of the circumstances preceding the stop, viewed in Gentles's favor, provided reasonable suspicion to justify the seizure.[6] See Cortez, 449 U.S. at 417. Because Portock stopped Gentles based on a tip, the stop's reasonableness "depends on the reliability of the tip itself." United States v. Nelson, 284 F.3d 472, 481 (3d Cir. 2002). Upon consideration of the factors indicating a tip's reliability,[7] we conclude the tip here lacked sufficient reliability to justify the stop. The

---

[6] Although Gentles stated in his pro se opposition to summary judgment that the Officers "were entitled to conduct a limited Terry [s]top," Dist. Ct. Dkt. No. 56 at 4 (underline added), his arguments following that statement show he contended that the Officers lacked reasonable suspicion to stop and detain him. We therefore do not consider Gentles's statement a concession.

[7] We consider whether: (1) the tip's information was provided to the police in person; (2) the witness could be held responsible if her allegations were untrue; (3) the tip's information would not be available to any observer; (4) the witness recently saw the alleged criminal activity; and (5) the witness accurately predicted future activity. United States v. Torres, 534 F.3d 207, 211 (3d Cir. 2008).

anonymous tip was communicated over the phone, and there is no evidence that the caller's identity could have become known or that the caller otherwise could have been held responsible for any fabricated allegations, which detracts from the tip's reliability. Although the caller had purportedly just witnessed the reported behavior, which tends to support a tip's reliability, the caller observed conduct that was not indisputably criminal and was visible to anyone in the area. Finally, the caller relayed no predictive information. Viewing these facts in Gentles's favor, the tip lacked sufficient indicia of reliability to justify the Terry stop.

Furthermore, the tip did not include "facts that [gave] rise to particularized suspicion." Johnson, 332 F.3d at 206. The anonymous caller told the police that a man was looking in garage windows before driving away. The Officers contend this activity suggests the man was trespassing, prowling, loitering, or casing a home for a burglary but this conclusion was unreasonable in light of the tip's content, given that the tip did not describe ongoing criminal activity or suggest that a crime was about to be committed, as the caller told the police that the suspect was leaving the area. See Couden v. Duffy, 446 F.3d 483, 494-95 (3d Cir. 2006) (concluding it was unreasonable for officers to believe a suspect was a burglar based on him looking "through a window into [a] house"). That Gentles and his vehicle matched the description given by the caller who observed no specific criminal activity did not, by itself, give rise to reasonable suspicion. See Florida v. J.L., 529 U.S. 266, 272 (2000) (holding that, to support reasonable suspicion, a tip must "be reliable in its assertion of illegality, not just in its tendency to identify a

7

determinate person"); Brown, 448 F.3d at 250 ("A tip is not reliable merely because its description of the suspect's visible attributes prove accurate." (internal quotation marks and citation omitted)).

An officer's observations, however, may provide reasonable suspicion when combined with an otherwise insufficient tip. Brown, 448 F.3d at 251-52. Portock made no such relevant observations here, finding no evidence of a crime as he drove through the scene before clearing the call, and merely observing Gentles speaking with another person upon encountering him ten minutes later in a different location. Thus, his observations did not furnish reasonable suspicion.

Although a suspect's evasive behavior or flight may bolster an insufficient tip, id. at 251, whether Gentles attempted to flee when he saw Portock is a disputed fact: Portock reported Gentles rushed to get in his car while Gentles averred he walked with a normal gait.[8] This dispute matters because merely "[w]alking away from the police hardly amounts to" the kind of flight that reflects consciousness of guilt sufficient to create reasonable suspicion. United States v. Valentine, 232 F.3d 350, 357 (3d Cir. 2000).[9]

---

[8] The District Court incorrectly disregarded Gentles's affidavit as self-serving and conclusory. Gentles, 2022 WL 4586136, at *5. His affidavit is "non-conclusory," "based on personal knowledge," and "directed at a material issue," which "is sufficient to defeat summary judgment" even if it contains information that is self-serving. Paladino v. Newsome, 885 F.3d 203, 209 (3d Cir. 2018) (quoting Lupyan v. Corinthian Colleges, Inc., 761 F.3d 314, 320 (3d Cir. 2014)).

[9] We do not consider Gentles's refusal to identify himself in our analysis on whether the stop was justified at its inception because that occurred after he was seized. See Johnson, 332 F.3d at 210 (a suspect's "later uncooperative behavior . . . cannot be held against him because it occurred after the stop had already begun" (emphasis

In addition to needing reasonable suspicion to justify a stop at its inception, the officers' conduct must be "reasonably related in scope [and duration] to the circumstances which justified the interference in the first place." Hiibel v. Sixth Jud. Dist. Ct. of Nev., Humboldt Cnty., 542 U.S. 177, 185 (2004) (citation omitted). Because "[n]o bright-line rule defines the length or scope of a Terry stop," Sutton v. Metro. Gov't of Nash. & Davidson Cnty., 700 F.3d 865, 876 (6th Cir. 2012), we consider "whether the police diligently pursued a means of investigating that was likely to confirm or dispel quickly their suspicions," United States v. Adamson, 441 F.3d 513, 521 (7th Cir. 2006).

Here, Gentles testified that, contrary to Portock's account, he did not become belligerent, curse, or cause a disturbance before being handcuffed. Given this dispute and the dispute concerning whether Gentles attempted to flee when he first saw Portock, a jury could conclude that the Officers handcuffing him, searching his pockets, and placing him in a police car for twenty minutes, exceeded the stop's purpose, which was to investigate a report that an individual was looking in garage windows. Cf. El-Ghazzawy v. Berthiaume, 636 F.3d 452, 457-58 (8th Cir. 2011) (holding police violated plaintiff's Fourth Amendment rights by handcuffing and frisking him where plaintiff "exhibited no erratic or suspicious behavior" and was "calm and cooperative during the entirety of the incident").

---

omitted)).

Although the record does not establish how much time passed between when the police learned from Gentles's fiancée that they had recently bought a house and were checking on the property and when he was released from the police car, a jury could conclude the stop's twenty-minute duration was unreasonable as the police could have asked Gentles why he was looking in garage windows at any time after stopping him, but did not. Cf. Lundstrom v. Romero, 616 F.3d 1108, 1123 (10th Cir. 2010) (holding officers violated plaintiff's Fourth Amendment rights when they handcuffed and detained her without first "undertak[ing] the most rudimentary investigation" and where "there was no ongoing emergency" or threat to their safety). Thus, the record contains material disputes as to whether the Terry stop's scope and duration were justified.

Accordingly, the facts viewed in Gentles's favor provide "evidence on which the jury could reasonably find for" him on his Fourth Amendment claim against both Officers. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). The District Court thus erred in granting the Officers summary judgment on this claim.

B

We next examine Gentles's state malicious prosecution claim against Portock.[10] To establish this claim, Gentles must show that Portock (1) instituted proceedings against him (2) without probable cause and (3) with malice and (4) that the proceedings were terminated in his favor. Zimmerman v. Corbett, 873 F.3d 414, 418 (3d Cir. 2017) (citing

---

[10] At oral argument, Gentles confirmed he is not asserting a malicious prosecution claim against Unruh.

10

Kelley v. Gen. Teamsters Local Union 249, 544 A.2d 940, 941 (Pa. 1988)).  Here, the

first and fourth elements are undisputed: Portock cited Gentles for disorderly conduct by

unreasonable noise and Gentles was found not guilty.  As a result, and because a jury

could infer actual malice from a lack of probable cause, see Kelley, 544 A.2d at 941, we

need only address whether the undisputed facts show Portock had probable cause to cite

Gentles for disorderly conduct.[11]

Under Pennsylvania law, one is guilty of disorderly conduct if he "makes

unreasonable noise" with the intention of causing "public inconvenience, annoyance or

alarm, or recklessly creating a risk thereof."  18 Pa. Stat. and Cons. Stat. Ann.

§ 5503(a)(2).  The speech's volume, rather than its content, determines whether a person

has made unreasonable noise under this statute.  Commonwealth v. Maerz, 879 A.2d

1267, 1269 (Pa. Super. Ct. 2005).

A factual dispute exists as to the volume of Gentles's speech.  Portock reported

that Gentles created a disturbance that caused people in the neighborhood to come out of

their homes while Gentles testified that people in the neighborhood were already outside

when the incident began, that he "never became belligerent," and that the police's

---

[11] Probable cause requires "proof of facts and circumstances that would convince a reasonable, honest individual that the suspected person is guilty of a criminal offense."  Lippay v. Christos, 996 F.2d 1490, 1502 (3d Cir. 1993);  Kelley v. Gen. Teamsters Local Union 249, 544 A.2d 940, 942 (Pa. 1988)  (defining probable cause under Pennsylvania law as "a reasonable ground of suspicion supported by circumstances sufficient to warrant an ordinary prudent man in the same situation in believing that the party is guilty of the offense" (citation omitted).

conduct, as opposed to his own, is what "grabbed people's attention." JA 61, 66. In light of Gentles's testimony, a jury could reasonably find Portock lacked probable cause to believe that Gentles had made unreasonable noise. See, e.g., Commonwealth v. Gilbert, 674 A.2d 284, 286-87 (Pa. Super. Ct. 1996) (holding yelled remarks were not unreasonably loud because, although neighbors came out "to view the 'ruckus,'" no evidence showed that the noise level was inconsistent with neighborhood standards). The District Court therefore erred in granting Portock summary judgment on this claim.

III

For the foregoing reasons, we will vacate the District Court's order granting summary judgment to Portock and Unruh on Gentles's § 1983 claim and to Portock on Gentles's malicious prosecution claim, affirm the order granting Unruh summary judgment on Gentles's malicious prosecution claim, and remand for further proceedings.[12]

---

[12] The Officers claim they are entitled to qualified and statutory immunity, but given the material factual disputes, we cannot resolve whether they are entitled to such defenses.